## Rosenblum v. City of Sharon

*Donald E. Hittle*, for plaintiff.

*John R. Boland, Jr.*, for defendant.

RODGERS, P. J., June 27, 1957.—On November 19, 1956, the City of Sharon passed an ordinance declaring certain structures to be nuisances, and ordering their abatement after notice to be given by designated city employes and providing for penalties for failure to act after notice. On February 19, 1957, plantiff received from defendants, sanitary officer and building officer, a letter signed by them which was later posted on his building stating that his property at 180 Shenango Avenue "in the opinion of the Building Officer and Sanitary Officer" constituted "a public nuisance" in violation of Ordinance No. 39-56 and "it is the Order of the Building Officer and Sanitary Officer that said nuisance be abated and removed by March 25, 1957."

On March 27, 1957, plaintiff filed a complaint in equity praying, inter alia, that Ordinance No. 39-56 be decreed unconstitutional, illegal and void and that the city be enjoined from enforcing it. A preliminary injunction was entered March 27, 1957, and hearing and argument was held on April 2, 1957, at which time it was agreed that the facts which the court should consider should consist of:

(1) Ordinance No. 39-56, attached hereto, as appendix A.

(2) The notice to plaintiff from the sanitary officer and the building officer attached hereto as appendix B.

(3) On February 21, 1957, there was posted on plaintiff's house, a poster signed by the building officer stating that, in their opinion, plaintiff's dwelling house was a public nuisance and ordering that it be abated

and removed by March 25, 1957. The notice also set out the penalty provisions of fine or imprisonment provided by the ordinance.

(4) On March 11, 1957, counsel for plaintiff wrote to said officers and to the solicitor of defendant, requesting that plaintiff or his counsel be informed of the facts on which the building officer and sanitary officer's actions were based. No answer to this request has been received by plaintiff.

Ordinance No. 39-56 declares the following structures to be public nuisances:

"(1) *Any structure which is unoccupied for a continuous period of 15 days*

"a. having any of the windows or doors in said structure broken out and either boarded up or left open.

"b. having any . . . outside part of the structure broken off, dilapidated or open so that access can be had to the building without the use of a key, or open so that access could be had without the use of a key or so that rain, snow, animals, birds, vermin, and other deleterious substances or things are not excluded from the building.

"(2) *Any structure occupied by people*

"a. lacking the sanitary services required by state and local law.

"b. lacking sufficient rooms and sanitary beds for the occupants of the building within the requirement 'of the sanitary and *moral* laws of the state and city'.

"(3) *Any structure*

"a. which is abandoned, dilapidated, unsafe, unsanitary or uninhabitable in the opinion of the sanitary office and is left so that it may be entered without the use of a key.

"b. which, in the opinion of the sanitary officer is not fit for human habitation."

The ordinance provides for a fine of $100 for each offense and in default of payment, imprisonment of

not more than 10 days and that the maintenance of a nuisance for a period of one full week shall constitute a separate violation.

Our courts have held that:

"Municipalities are not sovereigns; they have no original or fundamental power of legislation; they have the right and power to enact only those ordinances which are authorized by an act of the legislature. . . .

"Moreover, an ordinance must be in conformity with the provisions of the enabling statutes; if it conflicts therewith it is void": Genkinger v. New Castle, 368 Pa. 547, 549.

Three separate sections of The Third Class City Law of June 23, 1931, P. L. 932, added June 28, 1951, P. L. 662, consider the problem of nuisances, granting certain powers and providing certain procedures.

Article XXIII provides:

"Whenever the board of health shall determine, . . . that a public nuisance exists or is about to exist, it may order the nuisance to be removed." The act provides for a hearing before the board of health and for an appeal from the decision of the board to the court: 53 PS §37321.

Article XLI provides:

"The council of any city may, by resolution, authorize and empower the mayor of such city to present a petition to the court of common pleas, setting forth that any property, building, . . . has become a public nuisance, injurious or dangerous to the community and to the public health." The act provides for the appointment of viewers by the court and for an appeal from the decision of the viewers to the court: 53 PS §39140.

Article XXIV provides:

"In addition to other powers granted by this act, the council of each city shall have power, by ordinance: . . . To prohibit nuisances, including, but not limited to, . . . the carrying on of any offensive manu-

facture or business, and to require the removal of any nuisance or dangerous structure from public or private places upon notice to the owner, and, upon his default, to cause such removal and collect the cost thereof, together with a penalty of ten per centum of such cost, from the owner, by an action in assumpsit. The cost of removal and the penalty may be entered as a lien against such property in accordance with existing provisions of law. In the exercise of the powers herein conferred, the city may institute proceedings in courts of equity": 53 PS §37403(16).

Ordinance No. 39-56 requires *no action* by the "Board of Health." "The Council" or "The City". It provides for no hearing before a board of health, a board of viewers or a court of equity. Instead of an appeal to a court, it provides a penalty section which, in a year's time, could cumulatively amount to a $5,200 fine or 14 months imprisonment.

The ordinance is void.

This ordinance also plainly violates the provisions of article I, sec. 9, of the Constitution of Pennsylvania which provides that no citizen can:

". . . be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

"The 'law of the land' implies notice, the right to appear and answer and a remedy. Any proceeding whereby a man's property is swept away from him without a hearing, trial or judgment, or the opportunity to make known his rights, is not according to the law of the land": Samuels v. City of Beaver Falls, 5 D. & C. 2d 500, 512.

If council is going to use the power under subsection 16 instead of the power under board of health or building codes, it must meet the requirements of due process by an ordinance which provides the essential steps outlined by the legislature for the abatement of nui-

sances, including notice to the owner, *an opportunity to be heard*, the right to appeal to the court and an opportunity to remove the nuisance at his own expense. See Samuels v. City of Beaver Falls 5 D. & C. 2d 500, 515.

Under section 1, subsec. 1 (*b*), any structure which is unoccupied for 15 days stands condemned if one lonely sparrow should seek refuge through a broken attic window. This is a perfect example of the arbitrary exercise of the police power under the guise of "doing good".

"The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the 'tone' of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish": Medinger Appeal 377 Pa. 217, 225.

" 'We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change' ": White's Appeal, 287 Pa. 259, 267.

. . . " 'The courts must judge of the reasonableness of the action of the municipality, and that such action is not binding if it is unreasonable' ": Manorville Borough v. Flenner, 87 Pa. Superior Ct. 84, 91.

Section 3(*b*) condemns any structure which is not fit for human habitation. The fact that it is not fit for human habitation is not in itself sufficient grounds for destroying it. It may be fit for many other purposes.

" 'Where the power to legislate upon a given subject is granted, and the mode of its exercise and the details of such legislation are not prescribed, the ordinance

passed pursuant thereto must be a reasonable exercise of the power or it will be pronounced invalid' ": Mr. Justin Linn, Manorville Borough v. Flenner, 87 Pa. Superior Ct. 84, 91-92.

" 'All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public; but a limitation without reason or necessity cannot be enforced. Although the police power is a broad one, it is not without limitation, and a secure structure which is not an infringment upon the public safety, and is not a nuisance, cannot be made one by legislative fiat, and then prohibited' ": Bryan v. City of Chester, 212 Pa. 259, 262.

Section 2(b) condemns any structure occupied by people where there were not "sufficient beds" for the occupants within the moral laws of the Commonwealth. What are the moral laws of the Commonwealth concerning the number of people using a bed? There is an old barracks ballad concerning the problems of three aged unwed ladies in a now out-moded item of bedroom furniture which might give some guidance.

However, one would hesitate to condemn a dwelling place on the basis of such a standard.

As was said in the case of Murray v. Philadelphia, 364 Pa. 157, 176:

" 'Where a statute is "so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative".' "

The same is true of a city ordinance. An ordinance is a statute enacted by council. The language of Ordinance No. 39-56 is so "vague, indefinite, uncertain" and contradictory, that it cannot be enforced.

This ordinance has delegated to an administrative officer, the power *which was exercised in this case* to declare any unlocked structure a nuisance, which in his opinion was either abandoned or dilapidated or unsafe or uninhabitable or not fit for human habitation.

This is an unlawful delegation of power to a public official. Our Supreme Court has said:

"The legislature may, however, leave to administrative officers . . . the duty to determine whether the facts exist to which the law is itself restricted. In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed": Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260.

Other appellate courts have said:

"Even where the General Assembly is concerned, a law vesting discretionary power in an administrative officer, without properly defining the terms under which his discretion is to be exercised, is void as an unlawful delegation of legislative authority. . . .

"In Moy v. City of Chicago, 309 Ill. 242, (140 N.E. 845, 846) which involved power delegated to the health commissioner, it is said: . . . 'a statute or ordinance which subjects a person's rights to the discretion of an officer without any rules or provisions in the law to control the officer is void. If section 6 were construed to give to the health commissioner arbitrary power to determine when the condition of a laundry was dangerous or detrimental to the health of the employees or the public, it would be void.' There is nothing in the ordinance which indicates that full discretion was not given to the building inspector, and the face of the ordinance discloses that such discretion was vested in

him contrary to law": City of Kankakee v. New York Cent. R. Co., 387 Ill. 109, 55 N. E. 2d 87, 90-91.

*Jurisdiction*

The court of equity has jurisdiction to enjoin the city from interfering with property and to declare this ordinance void: Bryan v. Chester, 212 Pa. 259, 263.

Equity does have jurisdiction to enjoin such a prosecution where it is alleged not only that the statute or ordinance is unconstitutional and void but that its enforcement would cause plaintiff irreparable loss to his property, either by effecting, if not a total suppression of his business, at least a grave interference therewith, or by subjecting him to the imposition of cumulative, exorbitant and oppressive penalties pending judicial determination of the validity of the legislation. In such cases, the ground of equitable jurisdiction is the protection of property rights, and the fact that a criminal proceeding is involved is merely incidental: Adams v. New Kensington, 357 Pa. 557, 560-561.

This is such a case.

*Order*

And now, June 27, 1957, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That Ordinance No. 39-56 of the City of Sharon is unconstitutional, illegal and void.

2. That the City of Sharon, its mayor,. council, employes, servants, agents, representatives and aides whomsoever are severally and jointly hereby perpetually enjoined from enforcing or attempting to enforce any and all provisions of the said Ordinance No. 39-56.

3. That the City of Sharon is hereby ordered to promptly cause the removal of all signs and posters

placed on private property pursuant to or because of said Ordinance No. 39-56.

4. That the City of Sharon shall pay all costs of these proceedings.

5. That the injunction bond filed by the herein plaintiff is hereby cancelled.

6. That the prothonotary of this court shall give prompt notice to the parties and their counsel of the filing of this adjudication.