O'BRIEN *v.* STATE HIGHWAY COMMISSIONER.
FROBERG *v.* SAME.

SEPARATE OPINION.
BLACK, J.

1. NUISANCE—STATUTES.
   *Legislative determinations of nuisance, while entitled to the accord of great weight, are by no means conclusive.*

2. INJUNCTION—HIGHWAYS—BILLBOARDS—COVENANTS.
   *Landowners were not entitled to injunction against State highway commissioner to restrain removal of sign pertaining to their motel located 26' from centerline of highway, where they had granted State an easement for highway purposes and agreed therein by covenant, declared to be a perpetual covenant and to be construed as a real covenant attached to and running*

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur, Nuisances §§ 12, 73.
[2] 14 Am Jur, Covenants, Conditions and Restrictions § 221.
[3, 4] 25 Am Jur, Highways § 616.
     3 Am Jur 2d, Advertising § 13.
[5] 39 Am Jur, Nuisances § 15.
[6, 9] 14 Am Jur, Costs § 34 *et seq.*
[7] 4 Am Jur 2d, Appeal and Error § 525.
[8] 5 Am Jur 2d, Appeal and Error § 760 *et seq.*

with the land, that "no billboard, sign board or advertising device, other than those advertising articles produced or sold on the premises" would be erected or maintained within 300' of the highway centerline.

3. Highways and Streets—Regulation of Roadside Advertising.

The legislature may validly regulate roadside advertising devices, provided its enactment is related reasonably to the exercise of the police power, is free from invidious discrimination and includes no power of discrimination, even though aesthetic considerations lurk in and about the legislative judgment.

4. Same—Roadside Advertising—Aesthetics.

Aesthetics should at least be taken into account in determining whether the police power is properly exercised in regulating roadside advertising.

5. Same—Roadside Advertising—Standards for Approval—Statutes—Constitutional Law.

Provisions of statute conferring upon a highway commissioner having jurisdiction of a highway power to approve or remove unauthorized roadside signs and advertising devices at will without having declared them a nuisance and without prescribing reasonably precise standards for guidance are constitutionally invalid (CLS 1961, § 247.275; CL 1948, § 247-.278).

6. Costs—Injunction—Roadside Advertising Within Right-of-Way.

No costs are allowed in consolidated cases to enjoin State highway commissioner from removal of signs within right-of-way of State highways which are not limited access highways or a part of the interstate highway system.

## Opinion of the Court.

7. Appeal and Error—Questions Reviewable—Nuisance—Record.

The question whether a legislative determination that certain actions or some thing constitute a nuisance should be entitled to be accorded great weight or be considered conclusive should not be determined in the absence of a testimonial record made in an adversary proceeding requiring such decision.

8. Same—Questions Reviewable—Eminent Domain—Roadside Advertising.

Whether the use of power of eminent domain to acquire the right to regulate roadside advertising should be

resorted to should not be considered in a case wherein the exercise of such power is not involved.

9. COSTS—INJUNCTION—ROADSIDE ADVERTISING WITHIN RIGHT-OF-WAY.

No costs are allowed in consolidated cases to enjoin State highway commissioner from removal of signs within right-of-way of State highways which are not limited access highways or a part of the interstate highway system.

Appeals from Delta and Alger; Davidson (Bernard H.) and Baldwin (George S.), JJ. Submitted March 2, 1965. (Calendar Nos. 55, 56. Docket Nos. 51,095, 51,096.) Decided May 11, 1965. Rehearing denied July 13, 1965.

Complaint by Walter A. O'Brien and Norma M. O'Brien against State Highway Commissioner to restrain removal of highway sign on right-of-way advertising their motel. Similar action by Donald A. Froberg and Rosemary Froberg. Motions by defendant for summary judgments granted. Plaintiffs appeal. Defendant's motion for leave to appeal direct to Supreme Court granted. Cases presented together on appeal. Summary judgment against plaintiffs O'Brien affirmed. Summary judgment against plaintiffs Froberg reversed.

*Hansley & Neiman* (*Arthur A. Neiman,* of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Donald K. Goulais,* Assistant Attorneys General, for defendant.

BLACK, J. The immediate judgment of the Court is that a restrictive preface should introduce the ensuing opinion. Our purpose is that of making outset-clear what is *not* involved in the cases at bar, and that of comparing in a provisional way what is

*not involved* with what *may be* involved in some corresponding future case. The comparison should assist the legislature as that body considers two currently introduced bills to "regulate" roadside advertising devices, and another to "limit" control by the State highway department of trunkline rights-of-way.[1]

The legislature of Michigan has not as yet dubbed the word "nuisance" upon roadside advertising signs such as these plaintiffs are maintaining opposite their respective hostelries. Hence, the two recent authorities upon which the attorney general rests (*Ghaster Properties, Inc.,* v. *Preston,* 176 Ohio St 425 [200 NE2d 328]; *Opinion of the Justices,* 103 NH 268 [169 A2d 762]) are distinguishably inapplicable. We proceed:

In *Ghaster* the court had before it an Ohio statute which brands and then bans, as "public and private nuisances," specifically defined advertising signs and devices placed adjacent to such Ohio highways as make up a part of "the interstate system."[2] As for the New Hampshire opinion, the court made clear that it was considering a like "nuisance" bill. To quote that opinion (p 271):

"The opponents agree in accord with the settled rule that billboards which are nuisances may be removed without compensation to the owners. We believe that the legislative finding, which is entitled to great weight (*Opinion of the Justices,* 88 NH 484, 490 [190 A 425]) that billboards in proximity to the highway, such as are forbidden by the proposed law, are nuisances, is sustainable as a general prop-

---

[1] Senate Bill 73 and House Bills 2216 and 2451, session of 1965.

[2] It is also of presently distinguishing significance that the Ohio statute dealt with in *Ghaster* expressly excepts, from its ban:

"(C) Advertising devices indicating the name of the business or profession conducted on such property or which identify the goods produced, sold, *or services rendered on such property.*" (Emphasis supplied.)

osition and the objection to the bill upon this ground cannot prevail.  If in a specific situation a sign which is in fact not a nuisance is forbidden by the bill its removal should be required only upon payment of compensation."

This Court has before it no legislative finding, enacted or resolved, that roadside advertising signs or devices are nuisances.  What confronts us is a statute which prohibits the erection and maintenance, "on or along any highway," of "any sign, guide post, marker or advertising device without the approval of the commissioner or commissioners having jurisdiction over such highways" (quotation of section 5 of the highway sign act of 1925, as amended, CLS 1961, § 247.275 [Stat Ann 1963 Cum Supp § 9.1405]), and which authorizes the appropriate commissioner of highways to remove signs, guide posts, markers or advertising devices "that have not been duly authorized" (quotation of section 8 of same act, CL 1948, § 247.278 [Stat Ann 1958 Rev § 9.1408]).

To sustain as against constitutional assault the statute there in question, the court in *Ghaster* decided to reject two detailed studies, one of which had been made in Michigan by our own highway department.  Both were seemingly uncontroverted. The gist of such studies was that highway road signs do not cause traffic hazards or dangers.[3]

The Michigan study was made under the direction of J. Carl McMonagle, then director of the planning and traffic division of the Michigan State highway department, now professor and transportation

---

[3] The Ohio supreme court limited reference to and treatment of the two studies as follows (p 435):

"Furthermore, we note that the two scientific studies (Michigan and Iowa), upon which Ghaster places great reliance and which are supposed to establish conclusively that there is no relationship between signs and accidents, were both based upon data obtained before the advent of the interstate highway system."

specialist in the institute for community development of Michigan State University. It was incorporated in the record of the *Ghaster Case* and is described (*Ghaster* exhibit 15) as follows:

"The Michigan State highway department, in cooperation with the United States bureau of public roads, made a study of accidents and their relation to design and roadside features along a selected trunkline highway. The selected study section was a 100-mile stretch of highway on US-24 from the Ohio State line to the intersection with M-58 just south of Pontiac, and on M-58 from that intersection to its junction with US-10 northwest of the city."[4]

Mr. McMonagle testified as a witness in the *Ghaster Case*. He testified to the same conclusions as appeared earlier in an article published by the Traffic Quarterly, July 1955 issue: "Do road signs affect accidents?". The article was prepared by Mr. McMonagle and by Dr. A. R. Lauer, professor of psychology and director of the driving laboratory of Iowa State College. Received as exhibit 15 in the *Ghaster Case,* it concludes:

"The studies each confirm that there is no significant relationship shown between outdoor advertising signs and highway accidents. The evidence, if any, is slightly in favor of having something along the highway to arouse the motorist and keep him

---

[4] Nearly all the above "100-mile stretch of highway" has been tragically known, in Michigan for nearly two decades, as "Bloody Telegraph." That fact and its import may not have been known to the Ohio supreme court when it cast aside the Michigan study. It suggests, should this Court ever receive for decision like questions as were submitted to the court in *Ghaster,* that the study might be accorded greater persuasive worth as against thought that something about the interstate highway system has rendered its data obsolete. If it is a fact (which of course is not up for present test) that highway signs along Telegraph road (US-24) have not caused traffic accidents, then it may be that highway signs along interstate throughways and freeways are even less a threat to traffic safety.

alerted as far as efficient driving is concerned. These results fit in very well with what is known about efficiency of performance in many other areas from various psychological experiments. A certain amount of 'distraction' would seem necessary, if it may be so designated, to keep the driver or performer alert and at his highest level of efficiency." 9 Traffic Quarterly, pp 322, 329.

We allude to foregoing portions of *Ghaster's* record to demonstrate that the Ohio supreme court, when it decided to overrule the common pleas court (20 Ohio Op 51; 184 NE2d 552) and the court of appeals (194 NE2d 158) by accepting the general assembly's determination of nuisance as against *Ghaster's* proof, thereby decided a constitutional question not yet here; also to note for future reference that this Court is not disposed to depart from the settled rule that legislative determinations of nuisance, while entitled to the accord of great weight, are by no means conclusive. See treatment of this subject, 39 Am Jur, Nuisances, "III. Legislative Power Respecting Nuisances," §§ 12, 13, pp 292–295.

The sum of this preface is that the Ohio and New Hampshire cases are not in point.[5] They are cases concerned with legislatively adjudged nuisances. This brings us to the facts and issues at bar.

Plaintiffs O'Brien own and operate the Birch Creek Motel in Delta county. Their motel property fronts on highways US-2 and US-41. Plaintiffs Froberg own and operate the Christmas Motel in

---

[5] Nor is the Nebraska Case decided last December (*Fulmer* v. *State Department of Roads,* 178 Neb 20 [131 NW2d 657]). There, proceeding upon the authority of eminent domain, the Nebraska department of roads instituted action to obtain a permanent easement "for the control of outside advertising"; manifestly for the purpose of compliance with the herein-mentioned Federal regulations.

Alger county. Their motel property fronts on highway M-28. No one of the designated highways, in or near the separate motel properties of the plaintiffs, is a limited access highway or what is known as a throughway or freeway.

In June of 1964 the State highway department wrote plaintiffs O'Brien:

"Our records indicate that you have a sign pertaining to Birch Creek Motel located 26' east of centerline of northbound US-2. The right-of-way width at this location is 60 feet on the east side of centerline. Your sign therefore encroaches upon the State highway right-of-way in the following manner: commercial advertising on public right-of-way."

About the same time the department wrote plaintiffs Froberg:

"Our records indicate that you have a sign pertaining to Christmas Motel located 33' south of centerline of M-28 in front of motel. The right-of-way width at this location is 75 feet on the south side of centerline. Your sign therefore encroaches upon the State highway right-of-way in the following manner: commercial advertising on public right-of-way."

Each letter advised that "this encroachment is in violation of both State law and Federal regulations and therefore must be removed from highway right-of-way by June 15, 1964." Each letter threatened "physical removal * * * by our forces." These suits for injunctive relief followed.

The O'Brien suit was commenced in Delta county. The Froberg suit was commenced in Alger county. The defendant commissioner moved for summary judgment in each case. Both motions were granted. The circuit court in each instance ruled that the

defendant commissioner was empowered, under sections of the act of 1925 as amended (PA 1925, No 108 (CL 1948 and CLS 1961, § 247.275 *et seq.;* Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 9.1405 *et seq.*), to remove the O'Brien and Froberg motel advertising signs from the highway rights-of-way. The O'Briens and the Frobergs applied for leave to appeal. Each application was granted. The two appeals were consolidated and presented together.

The attorney general, representing the defendant commissioner, has correctly stated the controlling questions. His statement thereof follows:

"May the State highway commissioner, pursuant to rights obtained by highway easement remove advertising signs from the highway right-of-way?

"Is PA 1925, No 108, as amended, and the highway commissioner's actions thereunder pursuant to Federal regulations a constitutional exercise of the police power?"

*First: The O'Brien Case.*

Plaintiffs O'Brien concede that their legal rights are controlled by the terms of a conveyance the State obtained from them on October 4, 1956. The conveyance recites that the O'Briens have granted to the State "an easement for highway purposes, in, over, and upon the parcels of land" owned by the O'Briens. It concludes with this significant paragraph:

"The grantors covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, that no billboard, sign board or advertising device, other than those advertising articles produced or sold on the premises, shall be erected, permitted, or maintained in or upon the remaining lands and premises now owned by the grantors im-

mediately adjoining the lands herein conveyed, and within a distance of 300 feet from the highway centerline, measured at right angles to said line. This covenant is hereby declared to be a perpetual covenant and shall be construed as a real covenant attached to and running with the land."

Since it is not claimed that the Birch Creek Motel sign, which the defendant commissioner would remove, is one which advertises "articles produced or sold on the premises," and since the sign is and has been maintained by the O'Briens within the prohibited 300-foot limit, we are obliged to hold that plaintiffs O'Brien by the foregoing conveyance have effectively destroyed whatever right may have been theirs to object to such removal. Their case fails on that account.

*Second: The Froberg Case.*

This case is markedly different. The conveyance of 1929, under which the defendant commissioner claims the right to remove the Christmas Motel sign from the right-of-way of highway M-28, was by quitclaim deed of a right-of-way "to be used for public highway purposes only." The conveyance includes many reservations and exceptions and includes a reverter clause in case "the same should not be used for such highway purposes." It makes clear the intent of the then parties (Cleveland-Cliffs Iron Co. as grantor and the State as grantee) that an easement, limited to "highway purposes" only, was granted. It includes no prohibition, as in the ·instance of the O'Brien conveyance, against maintenance within the right-of-way of a motel sign or signs. The question then, in this Froberg Case, is whether the defendant commissioner may, in the absence of contention that the sign he would remove in some way affects or will affect public safety,

health, morals, or welfare, proceed as threatened under section 8 of the act of 1925.[6]

Following oral argument request was made that counsel submit supplemental briefs in response to this question:

"Does the act of 1925 as amended (CLS 1961, § 247.275 *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 9.1405 *et seq.*]) include, as a necessary part of the authority granted by sections 5 and 8 to the commissioner or commissioners of highways 'having jurisdiction,' requisite standards by which such authority may be exercised, sufficient to avoid a determination that said sections 5 and 8 are unconstitutional (a) in that they delegate legislative power, or (b) in that they delegate, without reasonable limitations, the power to discriminate at will?"

The attorney general, responding, says that the "Absence of standards under the sign act does not render same unconstitutional, because it was impracticable for the legislature to fix such standards." Thus is conceded what was and is manifest. The act provides no policy for the guidance of highway commissioners save that which is delegated to them *carte blanche.* It provides no standards for selection by the highway commissioner of the signs, guide posts, markers and advertising devices he is to "approve" under section 5, or of those he is to remove under section 8. In poorly concealed fact, the policy under which the defendant commissioner so far has assumed to act has not come from Michigan's legislature. It has come from Federally promulgated "policies and procedures requiring re-

---

[6] "Sec. 8. The proper commissioner or commissioners shall cause to be removed all signs, guide posts, markers and advertising devices that have not been duly authorized. (CL 1948, § 247.278 [Stat Ann 1958 Rev § 9.1408].)

moval of all advertising signs from all Federal aided highways."[7]

The attorney general does not explain why it was or now is difficult or "impracticable" for the legislature to provide standards for determination by highway commissioners that defined advertising signs, posted along or within highway rights-of-way (not publicly owned in fee), constitute nuisances or that they are otherwise offensive to public safety, health, morals, or welfare. Nor do we perceive any such difficulty. Hence, it is unnecessary to determine whether the contention of impracticability as made by the attorney general would, if valid in fact, constitute an exception to the constitutional requirement of legislative standards.

We agree that the legislature may validly regulate roadside advertising devices, provided its enactment is related reasonably to the exercise of the police power, is free from invidious discrimination, and includes no power of discrimination; even though aesthetic considerations lurk in and about the legislative judgment.[8] Once it was believed and ruled (*Wolverine Sign Works* v. *City of Bloomfield Hills,* 279 Mich 205, 208):

"Aesthetics may be an incident but cannot be the moving factor.

"The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards but may not arbitrarily strike down the maintenance of erected billboards or vest such power of arbitrary action in municipal officers."

---

[7] This quotation is taken from the attorney general's main brief, under heading "Federal regulations concerning removal of encroachments from public right-of-way must be complied with as prerequisite to Federal participation in the cost of highway construction."

[8] See annotation 58 ALR2d 1314, 1327: "§ 6 Esthetic Considerations."

Now, as written by unannounced truncation (in *Superior Township* v. *Reimel Sign Co.*, 362 Mich 481, 486) of the foregoing quotation of the *Wolverine Sign Case*,[9] we with other courts are visibly if plainly coming to conclusion that aesthetics should at least be "taken into account in determining whether the police power is properly exercised." (Quotation of *Opinion of the Justices, supra,* 270, 271, citing *inter alia Berman* v. *Parker,* 348 US 26 [75 S Ct 98, 99 L ed 27]; and *Passaic* v. *Paterson Bill Posting, Advertising and Sign Painting Company,* 72 NJL 285 [62 A 267]).

As for this Froberg case, we hold that sections 5 and 8 of the act of 1925, as amended, are constitutionally invalid. This Court has been specially vigilant in the guardianship of personal and property rights as against uncontrolled delegation of the power to legislate and enforce at will. See the leading case of *Osius* v. *City of St. Clair Shores,* 344 Mich 693, 698 (58 ALR2d 1079):

"There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, provided, however, that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits."[10]

---

[9] The foregoing complete quotation of the *Wolverine Sign Case* was cut, in the *Superior Township Case,* to the following (p 486):

"This Court has previously held:

'The city may establish zones and prohibit the erection of billboards therein and may, to promote public health, safety and general welfare, within reasonable considerations, regulate the maintenance of billboards.' *Wolverine Sign Works* v. *City of Bloomfield Hills,* 279 Mich 205, 208."

[10] For recent applications of this principle, see *McKibbin* v. *Corporation & Securities Commission,* 369 Mich 69, 82–84 and *Homrich* v. *Storrs,* 372 Mich 532, 540, 541.

The act of 1925, as amended, finds and declares no nuisance. It does not even purport to be an exercise of the police power. It simply attempts to vest, with the commissioner "having jurisdiction," the power to approve or disapprove at will the erection or maintenance of right-of-way signs and advertising devices. To paraphrase what was said in *Hoyt Brothers, Inc.,* v. *City of Grand Rapids,* 260 Mich 447, 451, 452, the statute attempts to equip the commissioner "having jurisdiction" with an arbitrary power in the exercise of which he may say to one applicant for approval "yes," and to another "no."

The summary judgment entered as against plaintiffs O'Brien is affirmed. The summary judgment entered as against plaintiffs Froberg is reversed. No costs to any party.

Souris, J. *(concurring)*. While I concur in that portion of Mr. Justice Black's opinion which relates directly to the appeals before this Court, I cannot subscribe to the forepart of his opinion, which he calls a preface, for the reason that I am not prepared, absent a testimonial record made in an adversary proceeding, to consider the issue discussed by Justice Black in that preface.

Nor do I join in any hint to the legislature that the eminent domain proceedings described in the report of *Fulmer* v. *State Department of Roads* (1964), 178 Neb 20 (131 NW2d 657), to which Justice Black makes reference in a footnote, would be an appropriate answer to the problems disclosed by the record of these cases of O'Brien and Froberg. I note, in passing, that even the Nebraska supreme court, construing the pertinent Nebraska statute, was not in agreement whether its constitutional validity depended upon an exercise of the police power or of the power of eminent domain.

Subject to the foregoing, I concur in Justice Black's affirmance of the O'Brien judgment and his reversal of the Froberg judgment, without costs to any party.

T. M. Kavanagh, C. J., and Dethmers, Kelly, Smith, and Adams, JJ., concurred with Souris, J.

O'Hara, J., did not sit.