(No. 41035.—

THE CITY OF CHICAGO, Appellee, *vs.* PENNSYLVANIA RAIL-
ROAD COMPANY *et al.*, Appellants.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

KLUCZYNSKI, J., took no part.

Winston, Strawn, Smith & Patterson, of Chicago, (Charles J. Calderini, Edward J. Wendrow, and Richard J. Brennan, of counsel,) for appellants.

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Edmund Hatfield, Assistants Corporation Counsel, of counsel,) for appellee.

Mr. Justice Underwood delivered the opinion of the court:

This is an appeal from a mandatory injunction issued by the circuit court of Cook County in an action brought by the City of Chicago against the defendant Pennsylvania Railroad Company. The injunction ordered the removal of certain advertisements that were painted, without the consent of the City, on the sides of the defendant's privately owned railroad bridges where they traverse the public streets of Chicago at underpasses and permanently prohibited such advertising in the future. We are informed that this is a test case to determine the power of the City to compel by way of injunction the cessation of this type of commercial advertising on the sides of privately owned railroad bridges which traverse Chicago streets. Seven other equity actions have been prepared by the City against major railroads which likewise engage in underpass advertising in Chicago, and these cases are being held in abeyance pending the outcome of this proceeding.

In count I of its complaint the City charged that the placement of advertisements upon defendant's railroad bridges over public streets at underpasses violated section 9—112 of the Illinois Highway Code (Ill. Rev. Stat. 1965, chap. 121, par. 9—112,) the relevant part of which reads as follows:

"No person shall place or cause to be placed any sign or billboard or any advertising of any kind or description upon any State highway other than such as may be directed by the Department, or upon any other highway other than such as may be directed by the authority having jurisdiction over such highway. This provision also shall apply to signs, billboards, or any other advertising except signs designating the name of the railroad and the clearance provided upon any bridge, other structure, wire, cable, or other device, over or above such highway, whether constructed by the Department or others.

\* \* \* \* \*

"Any person who violates any of the provisions of this section shall be fined not less than $10.00 nor more than $100.00 for each offense."

In count II of its amended complaint the City alleged that the advertising on defendant's bridges at underpasses also violated section 36—30 of the Municipal Code of Chicago which provides:

"No person shall post, stick, stamp, tack, paint or otherwise fix, or cause the same to be done by any person, any notice, placard, bill, card, poster, advertisement or other device calculated to attract the attention of the public, to or upon any sidewalk, cross-walk, curb or curbstone, flagstone, or any other portion or part of any public way, lamp post, electric light, telegraph, telephone, telephone or trolley line pole, hydrant, shade tree or treebox, or upon the piers, columns, trusses, girders, railings, gates or other parts of any public bridge or viaduct, or upon any pole box or fixture of the fire alarm or police telegraph system, except such as may be required by the laws of the state and the ordinances of the city.

"Any person violating any of the provisions of this section shall be fined not less than ten dollars nor more than two hundred dollars for each offense."

The City further alleged that the defendant railroad never

received the City's permission to place the advertisements complained of, and that the City's relief at law was inadequate because it would involve a multiplicity of suits without final relief.

The defendant railroad and intervenor TDI Outdoor Advertising, Inc., the railroad's licensee to sell the advertising space in question, denied that the placement of the advertisements violated either the State statute or city ordinance, and their answers raised the following further defenses to the action: (1) that the City had no standing to bring this type of action to enforce the criminal laws of the State; (2) that section 9—112 of the Illinois Highway Code is constitutionally void because it delegates an arbitrary and unlimited discretion to the authority having jurisdiction over the highway (the City in this instance) to make exceptions without specifying any rules or standards to guide the authority's discretion, and because it unconstitutionally delegates legislative power and confers upon public officials the power to grant special or exclusive privileges; (3) that the City is arbitrarily discriminating against railroad underpass advertising while at the same time permitting other forms of streetside advertising; (4) that the City is discriminating against railroad underpass advertising while permitting the Chicago Transit Authority to advertise on structures owned by it which traverse the City streets; (5) that railroad underpass advertising is a lawful business which in no way endangers the safety, health, comfort or general welfare of the public and cannot be constitutionally prohibited. Along with their answer the defendants served 29 interrogatories upon the City inquiring as to (a) who authorized instigation of the present suit; (b) whether the City had any proof or knew of any study which indicated that advertising above or beside public streets caused accidents; (c) whether railroad underpass advertising is any different in kind or degree from other types of advertising licensed by the City beside or over the

public streets; (d) whether the City had ever refused permission to the Chicago Transit Authority to affix advertising on its buses or on structures owned by it which extend over public streets; (e) whether the City had in the past five years ever placed any sign or banner over any public street or granted a license to any person, firm or corporation to do so. The City filed objections to these interrogatories as being "irrelevant and immaterial", and certain photographs were submitted by defendants in response to the City's objections which showed the type of railroad underpass advertising sought to be enjoined as well as various other advertising signs, billboards and posters erected in the vicinity of such railroad bridges. Defendants also served notice on the City that they intended to take a discovery deposition from Lester Kolom, a traffic engineer for the City of Chicago Bureau of Street Traffic. In response the City moved for a protective order denying the defendants' request to produce Kolom, and his affidavit was filed that he had no knowledge that would be helpful in this suit. An answering affidavit was filed by defendants' counsel stating that he was a participant in another case before the Illinois Commerce Commission wherein Kolom testified that he had investigated all fatal accidents occurring in the City of Chicago during the previous four years involving railroad bridges, piers and center columns, and had drafted specific recommendations for changes at each of the underpasses as part of his report.

The trial court denied the defendants' motion to strike count II of the City's amended complaint which charged the railroad with violating the City ordinance, sustained the City's objection that each of defendants' 29 interrogatories was either "improper, immaterial, irrelevant, or unnecessary", granted the City's motion for a protective order to prevent the production of Lester Kolom for the taking of his deposition, granted the City's motion for judgment on the pleadings, required removal from the bridges of all

advertising and permanently enjoined the placing of all advertisements upon the Pennsylvania's bridges within the territorial limits of Chicago except for the designation of the name of the railroad and the height clearance. For the reasons hereinafter stated it is our opinion that the decree was erroneous as a matter of law.

Two of the points argued by the City may be summarily disposed of: the first relates to the question of the extent of the interest of the railroad in its bridge—whether it holds a fee or only an easement; the railroad, in turn, questions the nature of the City's interest in the street—whether fee or easement. It suffices to say of these arguments that there appears in the record before us nothing from which a conclusive determination of the nature of the respective interests could be made. Nor, in view of our disposition of this matter, do we consider the question material. The second point susceptible of summary dismissal is the City's argument that the railroad's action in renting the bridge space through TDI may well have been *ultra vires* and thus the railroad may "have still less of a property right susceptible of constitutional protection." The short answer to this is that the City may not challenge this corporate action on the ground that it was *ultra vires. Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 Ill. 194, 204-5; see, also, *Rockford Trust Co.* v. *Moon,* 370 Ill. 250, 255.

The City devotes much of its brief to its argument that the prohibition of commercial advertising upon or near the public ways is a legitimate exercise of the police power and cites numerous authorities thought to be relevant thereto. However, that is not the question with which we are here concerned, and nothing said in this opinion is intended as an indication of disagreement with the City's position in that respect.

The problem here arises from the inadequacy of the statute itself. In our judgment that portion of section 9—

112 of the Illinois Highway Code relied upon as a basis for issuance of the injunction is unconstitutional due to the complete absence of standards to guide the exercise of discretion by the City in granting or refusing permission for the placement of advertising "upon" (which we also construe to mean "over") the City's streets. Furthermore, we are of the opinion that count II of the complaint should have been dismissed on defendants' motion because section 36—30 of the Municipal Code of Chicago is inapplicable to advertising on *privately* owned railroad bridges, and there existed, therefore, no violation of the ordinance which could have been enjoined.

The City ordinance which we have hereinbefore quoted fully prohibits the affixing of any advertisement to "any public bridge or viaduct". We believe that the use of the adjective "public" to modify "bridge or viaduct" clearly shows an intent to prohibit advertising on publicly owned bridges or viaducts. This prohibition does not, of course, affect the right of a private corporation such as defendant to make available space on its privately owned bridges for commercial advertising purposes. The City contends that "public" as used in this ordinance "includes what is 'open to the view of all' ", but we find this a strained construction when viewed either from the standpoint of normal usage or from the context in which the word is used in the ordinance. Certainly the defendant railroad's bridges are not "public" when judged by the standard we have long adopted to determine what constitutes a "public" highway, *i.e.,* whether or not the public generally has the free and unrestricted right to use it. (*Department of Public Works and Buildings v. Farina,* 29 Ill.2d 474, 478; *Van Amburg v. Reynolds,* 372 Ill. 317, 322; *Mudge v. Wagoner,* 320 Ill. 357, 362.) Words in a legislative enactment should be given their plain and ordinary or commonly accepted meaning unless the legislative intent would be defeated by so doing, (*Droste v. Kerner,* 34 Ill.2d 495, *cert.* den. 385 U.S. 456, 17 L. Ed.2d

509, 87 S. Ct. 612; *1957 Chevrolet* v. *Division of Narcotic Control of Dept. of Public Safety,* 27 Ill.2d 429), and nothing here connotes a legislative intent incompatible with that conveyed by the normal meaning of the language used: to prohibit advertising on all publicly owned structures. To adopt the construction of the word "public" now urged by the City would give unintended breadth to the ordinance. See *Jarecki* v. *G. D. Searle & Co.,* 367 U.S. 303, 307, 6 L. Ed. 2d 859, 81 S. Ct. 1579, 1582.

It is apparent to us that the third paragraph of section 9—112 of the Highway Code is unconstitutional on its face because it vests unlimited discretion in the highway authorities to permit advertising on public highways without supplying *any* rules or standards to guide the exercise of their discretion. The pertinent language is: "No person shall place or cause to be placed any sign or billboard or any advertising of any kind or description upon any State highway * * * *other than such as may be directed by the authority having jurisdiction over such highway."* (Emphasis added.) The City, which is the authority having jurisdiction over the municipal streets of Chicago (Ill. Rev. Stat. 1967, chap. 24, par. 11—80—2; chap. 121, par. 2—213), is thus given the arbitrary power to make exceptions to the flat prohibition contained at the beginning of this sentence. Thereunder, defendants contend, a city may give one railroad permission to advertise on its bridges while at the same time denying that right to other railroads under the same circumstances. The City responds that this interpretation represents a misreading of the statute which according to the City's view "prohibits signs, billboards and advertising of any kind upon highways—other than signs 'directed' (*i.e.* commanded) to be put there by the highway authority—that is, safety warnings and directional signs * * *." While it is this court's duty to construe acts of the legislature so as to uphold their constitutionality where

it reasonably can be done (*Illinois Crime Investigating Com.* v. *Buccieri,* 36 Ill.2d 556; *Saxton* v. *Industrial Com.,* 36 Ill.2d 453), we cannot cure constitutional defects in a statute by judicial amendment or construction. (*Boshuizen* v. *Thompson & Taylor Co.,* 360 Ill. 160, 173.) The statutory interpretation offered by the City wholly ignores the fact that the power conferred by the statute upon the governing highway authority to make exceptions to the flat ban on the placement of "any sign, billboard or advertising of any kind" not only empowers it to direct the placement of signs upon public highways, but also the placement of billboards and other advertising. The word "such" in the phrase "other than such as may be directed by the authority having jurisdiction" is not merely a limited reference back to such signs as the authority might direct be placed on the public highway but also to such billboards and advertising which the authority might direct be erected. It would be an absurd interpretation of the statute to say that the legislature intended to authorize the governing highway authority— the City in this case—to "command" that billboards or other advertising be erected on the public highways. We accordingly interpret the phase "other than such as may be directed by the authority having jurisdiction" as conferring upon the governing highway authority the power to permit exceptions to the general prohibition in the statute against advertising upon the public highways. The fact that the city council of Chicago has so interpreted the statute is well documented by its passage on November 15, 1966, of a motion to permit the Chicago Transit Authority to erect two illuminated signs 14 feet by 48 feet in dimension "one on each side of the elevated structure over and across West Chicago Avenue * * *", and the fact that the ordinances also, under certain circumstances, permit advertising signs to extend from adjacent property into the air above the street.

The power thus conferred upon the governing highway authorities to make exceptions to the general prohibition against the placement of any advertising "upon" or, in the case of railroad bridges, "over" the public highway, is a naked grant of discretionary power unaccompanied by any standards to guide in its exercise. In *O'Brien* v. *State Highway Commissioner* (1965), 375 Mich. 545, 134 N.W.2d 700, a Michigan statute strikingly similar in effect to the one here involved was declared unconstitutional for failure to provide standards for the governing highway commissioner in determining which advertising devices he might approve or remove. The statute provided: "No person, firm or corporation shall erect or cause to be erected on or along any highway any sign, guidepost, marker or advertising device without the approval of the commissioner or commissioners having jurisdiction over such highway * * *." (Mich. Stat. Ann., sec. 9—1405.) In declaring this statute unconstitutional, the Michigan Supreme Court reversed the summary judgment which had been granted in favor of the plaintiff in the trial court stating:

" 'There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate. This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, provided, however, that the standards prescribed for guidance are as reasonably precise as the subject-matter requires or permits.'

"The act of 1925, as amended, finds and declares no nuisance. It does not even purport to be an exercise of the police power. It simply attempts to vest, with the commissioner 'having jurisdiction,' the power to approve or disapprove at will the erection or maintenance of right of way signs and advertising devices. To paraphrase what was said in Hoyt Brothers Inc. v. City of Grand Rapids, 260 Mich.

447, 451, 452, 245 N.W. 509, the statute attempts to equip the commissioner 'having jurisdiction' with an arbitrary power in the exercise of which he may say to one applicant for approval 'yes,' and to another 'no.' " 134 N.W.2d at 706.

In the recent case of *Krol* v. *County of Will*, 38 Ill.2d 587, we declared an ordinance constitutionally void because it vested an unlimited discretion in the County Health Authority to determine the design and location of all sewage treatment or disposal systems. We said in *Krol*: "The power to approve or reject resides utterly in the Health Authority. '[A] law vesting discretionary power in an administrative officer without properly defining the terms under which his discretion is to be exercised is void as an unlawful delegation of legislative power. [Citations.] (*Richards* v. *Board of Education of Township High School Dist.*, 21 Ill.2d 104, 112; accord, *Dean Milk Co.* v. *City of Aurora*, 404 Ill. 331; *People ex rel. Wheeler* v. *Norvell*, 368 Ill. 325.)" 38 Ill.2d at 593.

In this case we deal with substantial property rights of the defendant Pennsylvania Railroad and its licensee. Where, as here, a statute subjects such rights to the arbitrary action of any person or authority, without any rules or provisions in the law to control that officer or authority, there is a constitutional violation (*People ex rel. Duffy* v. *Hurley*, 402 Ill. 562, 573; *People ex rel. Gamber* v. *Sholem*, 294 Ill. 204), and it is our duty to declare such statute void and unenforceable. We offer no opinion here as to the constitutional validity of a statute which might be drafted so as to prohibit all advertising above, upon or within a specified distance of the public highways, or which might incorporate adequate standards to determine appropriate exceptions to that general rule. We now hold merely that the unfettered discretion given in section 9—112 of the Illinois Highway Code to grant exceptions to the statute's general

prohibition against the placement of advertisements over the public highways is an impermissible delegation of legislative authority.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

Mr. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.