THE VILLAGE OF HYDE PARK

*v.*

THE OAKWOODS CEMETERY ASSOCIATION.

*Filed at Springfield May 14, 1886.*

1. EXEMPTING CEMETERY GROUNDS *from the control of the municipality in respect to highways—the charter of a cemetery association construed.* An act amending the charter of a cemetery association provided that "no road, street, alley or thoroughfare shall be laid out or opened *through*" its grounds, "or any part thereof," without the consent of its directors: *Held*, that the word "through," was intended to mean the same as the word "over," and the object was to prevent any part of the lands from being taken for road or street purposes.

2. SAME—*effect of the general Incorporation act of 1872, as operating to repeal such an exemption previously granted.* An act amendatory of the charter of a cemetery association, passed in 1867, gave the board of directors power to make improvements in the cemetery, or the streets adjoining the same, as they might deem proper, etc., and authorized the association to acquire lands, and subdivide the same into lots, and provided as follows: "And no road, street, alley or thoroughfare shall be laid out or opened through said grounds, or any part thereof, without the consent of the directors; nor shall any corporation now existing or hereafter created, be authorized to take, hold or possess any portion of said cemetery, by condemnation, without such consent." The act of 1872 gave the power to village trustees to "lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets," etc., within their corporate limits. The cemetery grounds were within a village incorporated under the act of 1872: *Held*, that the exemption given to the association was not repealed by the general Incorporation law of 1872, but that the two acts might stand together.

3. In such case, under the general law, all roads and streets in the village were placed under its control, except the lands of the association, and as to them, the association had the exclusive control.

4. REPEAL OF STATUTES—*by implication.* In the construction of statutes it is a well settled rule that a repeal by implication is not favored; and when two acts are seemingly repugnant, they shall be so construed, if possible, that the later one may not operate as a repeal of the former by implication. And a subsequent statute which is general, does not abrogate a former one which is particular.

5. EMINENT DOMAIN—*legislative grant in restraint of the exercise of the right—whether of binding force.* The right of eminent domain is an element of sovereignty, and a legislative grant or contract in restraint of a free exercise of this right is not binding on the State, and does not fall within the inhibition of the Federal constitution relating to laws impairing the obligation of contracts.

6. SAME—*necessity for the exercise of the right, as a political question; by whom to be determined.* The necessity or propriety of exercising the right of eminent domain, is a political question, which belongs exclusively to the legislature to determine. Hence the legislature may properly withhold from municipal authorities the power to condemn land for public purposes, as against some other body or corporation, on its lands already devoted to some other public use. It may confer power to exercise the right of eminent domain upon one corporation in preference to the other.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. GEORGE WILLARD, and Mr. GEORGE DRIGGS, for the plaintiff in error:

The opening of a street along the boundary line of defendant's grounds is not a violation of its charter prohibiting the opening of a street through said grounds.

The charters of private corporations must be construed strictly against the corporators. *Fertilizing Co.* v. *Hyde Park,* 70 Ill. 639; *Mills* v. *St. Clair County,* 8 How. 569; *Binghampton Bridge case,* 3 Wall. 75.

That the legislature is incapable of depriving the State of any sovereign right,—and especially the exercise of the right of eminent domain,—and that franchises are subject to this right, see *Mills* v. *St. Clair County,* 2 Gilm. 197; *Railway Co.* v. *Railway Co.* 87 Ill. 317; Cooley's Const. Lim. 281, 343; *Illinois and Michigan Canal* v. *Railroad Co.* 14 Ill. 316; *Railroad Co.* v. *Railroad Co.* 111 Mass. 125.

Exemptions from the exercise of sovereign powers have, so far as we have been able to discover, been confined to taxation. Such exemptions are upheld upon the ground that they are contracts between the State and the corporators, based upon a consideration. *State Bank* v. *People,* 4 Scam. 303; *Railroad Co.* v. *County of McLean,* 17 Ill. 291; *Neustadt* v. *Railroad Co.* 31 id. 484; *Railroad Co.* v. *Irvin,* 72 id. 452.

Without the consideration, the exemption, so-called, would be void. Strictly speaking, therefore, the result is a commutation of, and not an exemption from, a right to tax. *Hunsacker* v. *Wright,* 30 Ill. 146; *University* v. *People,* 80 id. 333.

Mr. RICHARD S. THOMPSON, for the defendant in error:

There being nothing in the constitution of 1848, under which the act creating the Oakwoods Cemetery Association was passed, prohibiting the legislature of the State from providing a suitable burial place for the dead, and exempting it from the right of town or village authorities to open roads, streets or thoroughfares through the same, the legislature had the power to grant the exemption contained in the charter in question, in the manner therein set forth. *Lake View* v. *Cemetery Co.* 70 Ill. 195.

The legislature did not intend, by the general act for the incorporation of cities and villages, to authorize the village of Hyde Park to open streets or roads through the grounds of this cemetery association.

The special act creating the cemetery association, and the amendment thereto, are not repealed by implication, through the general language used in the act under which the village of Hyde Park is incorporated, said last named act being a general law. *Ottawa* v. *LaSalle,* 12 Ill. 339; *Sullivan* v. *People,* 15 id. 233; *Supervisors* v. *Campbell,* 42 id. 492.

The act granting the cemetery association the exemption from municipal control in respect to streets, etc., within its grounds, constituted a contract between the State and its

corporators, which is within the provision of section 10 of article 1 of the constitution of the United States, prohibiting legislation impairing the obligation of contracts; and, so far as the act of 1872, for the incorporation of cities and villages, is susceptible of the construction claimed for it, to-wit, as authorizing the village trustees to condemn portions of said cemetery grounds for a public street without the consent of the directors of said association, said act is in violation of the constitution of the United States, and also in violation of section 14 of article 2, and of section 1 of the Schedule of the constitution of 1870, of the State of Illinois.   *Asylum* v. *New Orleans*, 105 U. S. 368; *Home of the Friendless*, 8 Wall. 430; *New Jersey* v. *Wilson*, 7 Cranch, 166.

A State can no more impair the obligation of a contract, by her organic law, than by legislative enactment, for her constitution is a law, within the meaning of the contract clause of the national constitution.   *Railroad Co.* v. *McClure*, 10 Wall. 511; *Trust Co.* v. *Debolt*, 16 How. 429; Sedgwick on Stat. and Const. Law, 637.   And the obligation of her contracts is as fully protected by that instrument, against impairment by legislation, as are contracts between individuals, exclusively. *New Jersey* v. *Wilson*, 7 Cranch, 164; *Providence Bank* v. *Billings*, 4 Pet. 514; *Green* v. *Biddle*, 8 Wheat. 1; *Woodruff* v. *Trapnall*, 10 How. 190; *Wolf* v. *New Orleans*, 103 U. S. 358.

Mr. JAMES P. ROOT, also for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a proceeding instituted by the village of Hyde Park, under the Eminent Domain act, in the Superior Court of Cook county, to condemn certain lands, owned by the Oakwoods Cemetery Association, for a highway or street which had been laid out by the village.

The village of Hyde Park, as is conceded in the argument, is a corporation organized under the general act for the in-

corporation of cities and villages, approved April 10, 1872. The petition to condemn the lands was filed April 18, 1878, and the appearance of the cemetery association was entered October 7, 1878; but so far as is disclosed by the record, no steps were taken in the case until the 2d day of December, 1885, when a motion was made to dismiss the petition, based upon an agreed statement of facts.

Under the facts embodied in the stipulation of the parties, it appears that the Oakwoods Cemetery Association was incorporated under an act of the legislature, entitled "An act to incorporate the Oakwoods Cemetery Association," approved February 12, 1853. (Private Laws of 1853, p. 550.) The act provides, that the association shall have power to own property, not exceeding one hundred and sixty acres of land, for a cemetery, and to survey and lay out the same into lots, suitable for the burial of the dead; that the proceeds arising from the sale of lots shall be applied to such improvements in the property as the directors may deem necessary and appropriate. The act also provides that all property and effects of the association shall be exempt from taxation. By an amendment to the act, approved and in force March 7, 1867, (Private Laws of 1867, p. 227,) it was further provided as follows:

"Sec. 5. The said board of directors shall have power to make such improvements in the said cemetery, or the streets adjoining the same, as they shall deem proper, and may regulate and control" the improvements, ornaments, etc.

"Sec. 6. The said association may purchase and own lands for their said cemetery, not exceeding in all five hundred acres, and may subdivide the same into lots; and no road, street, alley or thoroughfare shall be laid out or opened through said grounds, or any part thereof, without the consent of the directors; nor shall any corporation now existing, or hereafter created, be authorized to take, hold or possess any portion of said cemetery, by condemnation, without such consent."

10—119 ILL.

On January 21, 1864, said corporation, having been duly organized, became, by purchase, the owner of the south-west quarter of section 23, township 38, range 14, east. On February 28, 1868, the said corporation became the owner, by purchase, of the undivided half of a piece of land immediately adjoining on the east, to-wit, that part of the west half of the south-east quarter west of the railroad, of section 23, township 38, range 14, east; and by a decree in partition, on July 2, 1881, in the circuit court of Cook county, the north $21\frac{606}{1000}$ acres of this last named tract was set off to said association. The lands purchased were occupied and used exclusively for cemetery purposes. Under the petition filed, the village of Hyde Park seeks to condemn, for the purposes of a public street, the east thirty-three feet of the tract of land first purchased, and the west thirty-three feet of the land acquired by the second purchase, as aforesaid.

In the Superior Court it was contended, that under section 6 of the act of March 7, 1867, *supra*, the lands of the association were not liable to be condemned for public use by the village of Hyde Park. This view the court sustained, and dismissed the petition.

Before proceeding to a consideration of the question involved, it may be proper to state, that there are no graves on the line of the proposed street, nor has the land on the line been specially improved for burial purposes, the only improvement being a fence inclosing the lands, on the line between the two tracts owned by the association.

The power to open and extend streets is conferred on the city council in cities, and the board of trustees in villages, by paragraph 7 of section 62, chapter 24, of the statute entitled "Cities, Villages and Towns," as follows: "To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve, streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same." Under this section of the statute the village of Hyde Park claims the

right to condemn the lands described in the petition, while, on the other hand, the cemetery association claims, that under section 6, *supra*, the lands are exempt, and can not be taken for street purposes.   It will be observed that the language of section 6 is not of doubtful meaning, and it is plain that it was the intention of the legislature, in adopting the section, to prevent the lands of the association from being appropriated to road-purposes without the consent of the directors of the corporation.

There is no force in the suggestion that the proposed street does not violate the act because it may be constructed on the division line of two tracts of land, and hence it is not "laid out through the lands."   The language of the act is, "no road, street, alley, etc., shall be laid out through said grounds, or any part thereof."   We think the word "through," as here used, was intended to mean the same as the word "over," the obvious intention being to protect the cemetery lands, or any part thereof, from being taken for road or street purposes.

If we are correct in the construction placed on section 6 of the act, two questions remain to be considered: First, has that section been repealed or modified by the general law, which authorizes cities and villages to lay out and extend roads, streets, etc.; and second, had the legislature the power to exempt the property from the operation of the law of eminent domain, which has been conferred on the village.

If section 6 was repealed by the general act of 1872, the repeal was by implication, as the general act does not, in any manner whatever, allude to the act incorporating the association.   In the construction of statutes, it is a rule of law well settled, that a repeal by implication is not favored; and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication.   (*Town of Ottawa* v. *LaSalle*, 12 Ill. 339.)   In the same case it was also held, that a subsequent statute which was general, does not abro-

gate a former statute which is particular.   The act conferring
the powers on the association was special, and, under the rule
announced, was not abrogated by the general law.   The act
of 1872 confers general power to lay out and vacate roads
and streets, on cities and villages, within their corporate lim-
its; but within the village of Hyde Park, by special act, the
association had previously been authorized to acquire certain
lands for a public purpose, and such lands, by the terms of
the act, were not liable to be taken for road purposes.   The
two acts may stand together.   Under the general law, all
roads and streets in the village are under its control, except
the lands of the association, and as to those lands the asso-
ciation has exclusive control.

We now come to the question whether the statute exempt-
ing the lands acquired by the association from being taken
for road or street purposes, was a valid enactment.   It is
claimed that the acts of the legislature creating the cemetery
association, when accepted, and the purchase of lands under
said acts, and the dedication of the same to public use, con-
stituted a contract between the State and the corporators of
the association, within the provision of section 10, article 1,
of the constitution of the United States, which prohibits legis-
lation impairing the obligation of contracts.   If this position
was correct, it is plain that any future legislation authorizing
the taking of the lands could not be sustained, as the legis-
lature has no authority to enact a law impairing the obliga-
tion of a contract.   But the rule invoked has no application
to a case of this character.   The right of eminent domain is
an element of sovereignty, and a contract in restraint of a
free exercise of this right is not obligatory on the State, and
does not fall within the inhibition of the constitution of the
United States.   Cooley, in his work on Constitutional Lim-
itations, (3d ed.) p. 525, in the discussion of this question
says:   "Any legislative bargain in restraint of the complete,
continuous and repeated exercise of the right of eminent do-

main, is unwarranted and void; and that provision of the constitution of the United States which forbids the State violating the obligation of contracts, could not be so construed as to render valid and effectual such a bargain, which originally was in excess of proper authority." See, also, p. 343; *Railroad Co.* v. *Railroad Co.* 97 Ill. 506; *West River Bridge Co.* v. *Dix*, 6 How. 531.

There are cases where the State might bind itself, and where it would be powerless, under the provision of the constitution cited, to pass future laws relieving itself of assumed obligations; but this is not one of them. The State had no power to divest itself of the right of eminent domain, by any act it might pass which would prevent the exercise of that right in the future, when, in the opinion of the legislature, a case arose wherein the public interest demanded the exercise of the power. But while we hold that the State can not divest itself of the power of eminent domain, it by no means follows that the village of Hyde Park has the right to condemn the lands in question. The necessity or propriety of exercising the right of eminent domain is a political question,—one which belongs exclusively with the legislature to determine. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake*, 71 Ill. 333.) It is a question with which the courts have no concern, as it is not judicial. By keeping this principle in view, the question involved in this case is freed from difficulty. Here, the legislature, believing that the public good to be secured was sufficient to authorize the cemetery association to take and hold the property involved, for burial purposes, conferred the power on the association; and in the grant it was provided, that the lands should be exempt from taxation, and that streets or highways should not be laid out through such lands. Under this power, the lands were taken and appropriated to a public use. Now, the legislature has never determined, by any subsequent act, that the right of eminent domain shall be exercised as to this

property, and until such time as the State shall otherwise determine, the association has the clear right to hold the lands free from taxation, or the laying out of streets or highways through them. As was said before, the act of 1872, authorizing cities and villages to lay out streets, did not repeal section 6 of the act conferring certain powers on the association, and the only determination of the State that the lands in question shall be devoted to public use, is to be found in that act.

*Eastern Railroad Co.* v. *Boston and Maine Railroad Co.* 111 Mass. 125, is a case in point. In speaking on the question of eminent domain, the court there said: "It belongs exclusively to the legislature to determine whether the public benefit to be secured is sufficient to warrant the taking,—and this is not a judicial question. * * * The right itself may be delegated to corporate bodies, public or private; and when the enjoyment of two public rights would, to some extent, interfere, it is, in the language of Chief Justice SHAW, 'for the legislature to determine which shall yield, and to what extent, and whether wholly, or in part, only, to the other; and such question will ordinarily be determined by the legislature according to their conviction of the greater preponderance of public necessity and convenience.'"

Here, two corporations are claiming the enjoyment of the exercise of the same right over the same lands. It was within the province of the legislature of the State to determine which one of the corporations should exercise the superior right and which shall yield. This the legislature has done. It has declared that the grounds of the cemetery association devoted to the burial of the dead, shall not be taken and appropriated for the purpose of streets or highways,—that the superior right, for the good of the public, is in the cemetery association; and that determination will have to prevail.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*