(No. 27835.— )

THE CITY OF KANKAKEE, Appellee, vs. NEW YORK CEN-
TRAL RAILROAD COMPANY, Appellant.

*Opinion filed May 16, 1944.*

EVA L. MINOR, of Kankakee, (S. W. BAXTER, and C. P. STEWART, both of Cincinnati, Ohio, of counsel,) for appellant.

VICTOR N. CARDOSI and DONALD GRAY, both of Kankakee, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

In October, 1942, the city of Kankakee filed in the circuit court of Kankakee county its complaint praying an injunction issue against the New York Central Railroad Company, appellant, to abate an alleged nuisance. The complaint alleges the existence of an ordinance prohibiting anyone in charge of any smokestack of a locomotive or other machine, or of a chimney in any building, from allowing the emission of dense smoke for a period aggregating six minutes in the hour, or allowing the escape from any smokestack in the open air of such quantities of ash, dust, cinders, or other material or noxious gases as to cause injury to others, a violation of which is declared to be a nuisance; that appellant did permit the emission of dense smoke from the chimneys of a certain roundhouse in the open air, to the damage of inhabitants living near said railroad property, and that the acts charged constitute a nuisance and damage the property, health, peace and comfort of the general public, and prays for an injunction requiring appellant to abate the nuisance. A copy of the ordinance is attached to the complaint as an exhibit.

Appellant answered denying that the ordinance had been in force and effect since the date of its alleged passage in August, 1942; denies it permitted the emission of dense smoke, or that it is doing anything that constitutes a nuisance. The case was heard in open court before the chancellor, and a decree entered finding that the ordinance involved was valid and legal; that appellant had allowed soot, cinders and smoke to be emitted in the open air and cast upon persons and property in the neighbor-

hood of appellant's roundhouse, and that the same constituted a nuisance, and issued a permanent injunction against the emitting of smoke from the roundhouse or from the locomotives, as prohibited in the language of the ordinance. The judge certified that the validity of the ordinance relied upon was involved, and that the public interests required an appeal to be taken directly to this court.

While counsel for appellee contend appellant has been guilty of creating a nuisance at common law, which would authorize its abatement by injunction, it is apparent from the pleadings and the acts charged, and the certificate of the matter of public importance requiring an appeal to this court, that the validity of the ordinance of the city of Kankakee is the principal matter involved. Sections one and two of the ordinance are as follows:

"Section 1. It shall be unlawful for any person owning or in charge of any smoke stack of any locomotive, tar kettle, steam machine or contrivance, or of any open fire, smoke stack, or chimney of any building or premises to allow the emission of dense smoke except for a period of or periods aggregating six minutes in any one hour at the time when the firebox is being cleaned out or a new fire being built therein. Such emission of smoke is hereby declared to be a nuisance and may be summarily abated by the building inspector in charge or by anyone whom he may duly authorize for such purpose. Such abatement may be in addition to the fine hereinafter provided.

"Section 2. No person shall cause or allow the escape from any smoke stack or chimney into the open air of such quantities of ash dust, soot, cinders, acid, or other fumes, dirt or other material or noxious gases in such place or manner as to cause injury, detriment, nuisance, or annoyance to any person or to the public or to endanger the comfort, repose, health, or safety of any such person or the public, or in such a manner as to cause or have a natural tendency to cause injury or damage to business or

property. Such escape of such materials, gases, or fumes is hereby declared to be a nuisance and may be summarily abated in addition to the fine hereafter provided."

Section 3 defines what is meant by "person." Section 4 is as follows: "The building inspector of the City of Kankakee is charged with the enforcement of this ordinance." Section 5 is as follows: "Any person in possession or control of any building or premises upon which any nuisance, as herein defined, is allowed to exist or to continue, who shall fail to abate the same within a reasonable time after notice of the existence of such nuisance is given by the building inspector of the City of Kankakee, shall be guilty of maintaining a nuisance and shall be fined Twenty-Five ($25.00) Dollars for each day on which such nuisance was suffered to exist. The notice by the building inspector or his authorized agent, shall be in writing."

At the trial the plaintiff offered the ordinance in evidence, and its introduction was objected to by the defendant upon the ground it was void, as being unreasonable and arbitrary, and because it delegated discretionary and summary power in an administrative officer without defining the terms under which this discretion could be exercised; and also contended the ordinance was void because it was beyond the power of the city to regulate the operations of a public utility by reason of the provisions of the Public Utilities Act. The objection to the introduction of the ordinance was overruled, and the evidence offered by the plaintiff is largely to establish the commission of acts prohibited by the ordinance.

A large part of the argument of both the parties is devoted to the question whether it is within the power of the city to pass an ordinance of this kind, insofar as it affects a public utility, because of the numerous holdings that the sole power of regulating railroads and other public utilities is vested in the Illinois Commerce Commission. This question can arise only where the city has enacted an

ordinance which is otherwise valid, for if the same were nugatory and void, because of its being arbitrary and unreasonable, or because of the improper delegation of discretionary authority to an administrative officer, no question could arise as to the jurisdiction of the city or the Illinois Commerce Commission.

The facts in this case disclose that the defendant for over fifty years has owned and maintained a railroad shop or roundhouse within the city limits of the city of Kankakee; that incoming engines have their fires drawn therein over pits, and engines served have their fires started under some of the twelve chimneys or smokestacks of the building; that until about two years ago an average of twenty-eight engines a day were serviced by either firing them or drawing the fires, and that at the present time, because of war conditions, from thirty-eight to forty are being thus serviced every day. The shops are located in an industrial part of the city, there being in the immediate neighborhood a gas plant and two paint factories, the larger of which covers two blocks of territory. These three institutions each have one tall smokestack or chimney.

The smoke complained of is occasioned principally by the drawing of fire and lighting of fireboxes. When a fire is drawn the burning contents of the firebox is dumped into a pit under one of the chimneys and dampened down, causing smoke. When a firebox is ignited about three quarters of a ton of coal is spread in the firebox and ignited, and a blower forces the air to cause combustion all over the bottom of the firebox, thus producing smoke. When the fireboxes are ignited the engines are taken out from under the chimneys and placed in the railroad yard until ready to be used on trains, and thus at intervals as the fires are renewed cause smoke.

A considerable number of houses are located in the immediate neighborhood of the railroad yards and shop, the occupants of which testified that smoke and soot and

dirt and ashes are cast upon them as the smoke emanates from the roundhouse or engines, causing annoyance and discomfort to person and property. It was against this situation the ordinance was directed.

The point is raised that the ordinance is unreasonable and arbitrary, at least so far as it affects appellant. Section 1 applies to any person owning or in charge of any smokestack of any locomotive, or chimney of any building or premises allowing the emission of dense smoke except for a period of or periods aggregating six minutes in any one hour at the time when the firebox is being cleaned out or a new fire being built therein. The emission of dense smoke is declared a nuisance that may be summarily abated by the building inspector or by any one whom he may duly authorize. Section 2 prohibits the escape from any smokestack or chimney of such quantities of ash dust, soot, cinders, acid, or other fumes, dirt, or other material or noxious gases in such place or manner as to cause injury, detriment, nuisance, or annoyance to any person or to the public, or in such manner as to cause, or have a natural tendency to cause injury or damage to business or property.

The complaint was based upon the emission of smoke from cleaning the fireboxes and rebuilding the fires, which is prohibited by section 1 of the ordinance; and also alleges a violation of section 2 by reason of the fact that such smoke has damaged the inhabitants of the neighborhood by falling upon the draperies in their houses and upon the laundry being dried in their yards. If the ordinance is construed to prohibit the emission of dense smoke for but six minutes in the hour, it would, so far as defendant is concerned, if enforced, be practically prohibitive. Each engine requires a dumping of the fire and the building of a fire, which would mean an average of eighty occasions in twenty-four hours of causing smoke, either by wetting down the fire dumped into the pits, or by building new

fires in the engines. The ordinance would allow less than two and one-half hours for eighty operations, without taking into consideration smoke caused by engines going into the yards or coming out of the yards having occasion to increase their fires to get up the requisite amount of steam. Assuming one engine could be serviced without the emission of dense smoke for over six minutes, in order to comply with the ordinance an average of more than three engines must complete their operations simultaneously, or be subject to a penalty of a fine of $25 per day and summary abatement.

The ordinance also makes smoke which causes injury, detriment or annoyance to any persons a nuisance subject to fine and abatement. Most of the evidence introduced to establish the violation of the ordinance consisted of instances where soot fell upon draperies or clothes being laundered; but, in addition to smoke, the discharge of any ash, cinders or fumes likewise is made a nuisance. If annoyance or detriment is made the test of a nuisance practically no business is immune from abatement. People residing in industrial communities must bear, in part, the annoyance or detriment that is occasioned by industries of the community. There is no definition or test contained in the ordinance as to what is meant by dense smoke, although it appears from testimony of engineers and officers of the defendant that at several places where they maintain railroad shops the prohibited amount of smoke is defined with respect to how much it obscures visibility at the moment of the emission, so as to furnish the test or standard by which a violation of the ordinance can be measured.

It was abundantly shown it was impossible to completely prevent smoke, and there are occasions, when firing or dousing a fire, when it is impossible, for the time at least, to prevent heavy dense smoke. The only measure or test appearing in the ordinance is the judgment or discretion of the building inspector. Under the ordinance, if he gives

notice that such a nuisance is created he is authorized to abate it, and in addition to collect a fine of $25 per day. The ordinance appears to be so broad and sweeping in its scope as to be almost impossible to be complied with, and if complied with, to be almost prohibitive of defendant's use of its shops.

In fact, most of the evidence is directed to private damage of neighboring people. In *Forbes* v. *Hubbard,* 348 Ill. 166, we held that the use of property which is injurious to comfort, safety, morals or welfare may be prohibited, but that such power must be based upon the doctrine of overruling necessity or bear substantial relation to the public good and may not be based alone upon aesthetic considerations. Neither can a city, under its delegated authority from the legislature, act unreasonably or arbitrarily to declare what shall be a nuisance, because to do so would subject every business and all of the property within the city to the will of the local authority.

The power of abatement by the building inspector of a business of such magnitude as the business of that of the defendant in this case is extreme, as both sections 1 and 2 provide that in case of violation the alleged nuisance may be summarily abated. Summary abatement would mean to put down or destroy without process. This means the inspector can, upon his own judgment, cause the alleged nuisance to stop on his own authority and effect a destruction of property at his discretion. Appellee contends that it cannot be supposed the building inspector will go to this extreme, but it appears from the record in this case that the city of Kankakee brought the injunction suit through his agency, and he, on behalf of the city, signed the complaint, so it would appear that both the city and the inspector construed the ordinance as giving him authority to proceed on his own initiative.

Where a power is conferred upon a municipal corporation to regulate a business or calling, it is without authority

to delegate discretionary authority to others. It is supposed that the power of the corporate body is to be exercised by the city in the mode prescribed, and any attempt to transfer such power to others is unwarranted. (*People ex rel. Healy* v. *Clean Street Co.* 225 Ill. 470; *City of Sullivan* v. *Cloe,* 277 Ill. 56.) Even where the General Assembly is concerned, a law vesting discretionary power in an administrative officer, without properly defining the terms under which his discretion is to be exercised, is void as an unlawful delegation of legislative authority. *People ex rel. Gamber* v. *Sholem,* 294 Ill. 204.

In *Moy* v. *City of Chicago,* 309 Ill. 242, which involved power delegated to the health commissioner, it is said: "On the other hand, a statute or ordinance which subjects a person's rights to the discretion of an officer without any rules or provisions in the law to control the officer is void. (*People* v. *Sholem,* 294 Ill. 204.) If section 6 were construed to give to the health commissioner arbitrary power to determine when the condition of a laundry was dangerous or detrimental to the health of the employees or the public it would be void." There is nothing in the ordinance which indicates that full discretion was not given to the building inspector, and the face of the ordinance discloses that such discretion was vested in him contrary to law.

Appellee asserts the facts shown were sufficient to establish a nuisance as at common law, and to authorize issuance of an injunction to require its abatement. It is only in extreme cases, unless the rights of the parties as to the fact of the nuisance have been settled in an action at common law, that a court of equity will take jurisdiction to abate a nuisance by injunction. (*City of Pana* v. *Central Washed Coal Co.* 260 Ill. 111; *Dunning* v. *City of Aurora,* 40 Ill. 481; *Nelson* v. *Mulligan,* 151 Ill. 462.) And even though a nuisance may actually exist, as a usual thing an injunction will not be granted to abate it if redress may

be obtained in a court of law. *Roloson* v. *Barnett,* 243 Ill. 130; *Stead* v. *Fortner,* 255 Ill. 468.

It is clear from an examination of the pleadings, the evidence, the opinion of the trial court and the certificate of the court that the validity of an ordinance was involved, that the decree in this case was based upon the ordinance. Doubtless if the trial court had based its decree upon the facts claimed to constitute a nuisance at common law it would have given some consideration to the question in its written opinion. No such contention was made at the trial, and cannot be now urged here. We might comment in passing that the permanent injunction issued by the court is almost in the language of the ordinance, thus failing to describe the acts the appellant must refrain from doing. The decree of a court in an injunction case should be definite, clear and concise in its terms. It should not put the whole conduct of the defendant's business in peril of a summons for contempt. *Oehler* v. *Levy,* 234 Ill. 595; *Swift & Co.* v. *United States,* 196 U. S. 375, 49 L. ed. 518.

We are of the opinion that the ordinance in question is unreasonable and arbitrary, at least in its operation upon the business of the defendant, and that an unlawful discretion was vested in the building inspector in that an unwarranted delegation of authority and discretion to exercise summary power was vested in him without defining the terms and conditions under which such discretion could be exercised, and consequently the ordinance is void and of no effect. There being no valid ordinance enacted it becomes unnecessary to comment upon the alleged conflict of authority between the city and the Illinois Commerce Commission with respect to the former's authority to enact a proper ordinance which would apply to a public utility.

The ordinance being void in so far as it affects the appellant, the decree of the circuit court of Kankakee county should be and is hereby reversed.

*Decree reversed.*