THE FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Plaintiff-Appellant and Cross-Appellee, v. LOREN AND GISELA BROWN FAMILY TRUST, Defendant-Appellee and Cross-Appellant (Bruce Gordon *et al.*, Defendants-Appellees).

Second District   No. 2—00—0289

Opinion filed July 17, 2001.

RAPP, J., dissenting.

Scott M. Day and Rachel K. Robert, both of Day & Robert, P.C., and Robert G. Black, of Law Offices of Robert G. Black, both of Naperville, for appellant.

Stephen D. Helm, Jacqueline J. Casey, and David W. Krula, all of Steve

Helm & Associates, of Naperville, for appellee Loren & Gisela Brown Family Trust.

Gary M. Vanek, of Schwarz, Vanek & Weiler, P.C., of West Dundee, for appellee Bruce Gordon.

Samuel G. Harrod IV, of Meltzer, Purtill & Stelle, of Schaumburg, for appellee Dartmoor Homes Acquisition Corporation.

Michael M. Roth, of Wildman, Harrold, Allen & Dixon, of Lisle, for *amici curiae* County of Du Page, Homewood-Flossmoor Park District, McHenry County Preservation District, and City of Naperville.

Bryan E. Mraz, of Law Offices of Bryan E. Mraz & Associates, of Roselle, for *amicus curiae* Village of Bartlett.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and George J. Sotos and Mary T. Nagel, Assistant Attorneys General, of counsel), for *amicus curiae* People of State of Illinois.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, the Forest Preserve District of Du Page County (the District), appeals the trial court's entry of summary judgment in favor of defendants, the Loren and Gisela Brown Family Trust (the Browns), Bruce Gordon, Dartmoor Homes Acquisition Corp. (Dartmoor), and unknown others. On appeal, the District argues that the trial court erred in granting summary judgment in favor of defendants.

In the nonpublishable portion of this opinion, we address the District's contention that the trial court erred in denying the District's motion to disqualify the Browns' counsel. We also address therein the Browns' cross-appeal of the trial court's orders striking portions of their traverse and motion to dismiss and denying their motion to reconsider.

## FACTS

On May 19, 1998, the District passed Ordinance No. 98—206, which authorized the District's executive director, staff, and attorneys (collectively, the staff) to enter into negotiations for the acquisition of property owned by the Browns. The ordinance provided in relevant part:

> "WHEREAS, the Forest Preserve District of Du Page County, Illinois has determined a valuation for said fee simple parcel which it believes to represent a fair amount to be offered to the owners of said property.
>
> NOW, THEREFORE, BE IT ORDAINED by the President and

the Board of Commissioners of the Forest Preserve District of Du Page County, Illinois, as follows:

1. That it is necessary and desirable that the real estate described in Exhibit A and depicted in Exhibit B attached hereto, be acquired in fee simple by the said Forest Preserve District for one or more of the purposes set forth.

2. That the Executive Director, his staff and the Forest Preserve District attorneys be, and hereby are, authorized to negotiate for the acquisition of the property in fee simple described in Exhibit A and depicted in Exhibit B.

3. That the Executive Director, his staff, and the Forest Preserve District attorneys be, and are hereby authorized, to respond to each individual property owner who expresses a desire to convey less than fee simple, either by less than the entire parcel of real estate or by conservation easement, by fully receiving the property owners' proposal and submitting a report to the Forest Preserve District Land Acquisition Committee evaluating the extent to which said lesser acquisition compromises the need and desire for the fee simple acquisition, and the cost of effectiveness of said compromise.

No fee simple acquisition shall be reduced or altered without approval of the President and Forest Preserve District Board of Commissioners." Forest Preserve District of Du Page County, Ordinance No. 98—206 (eff. May 19, 1998).

The District and the Browns did not reach an agreement.

On June 2, 1998, the District passed Ordinance No. 98—228, which provided in relevant part:

"WHEREAS, on the 19th day of May, 1998, Ordinance No. 98—206 was adopted providing for the negotiation for the acquisition of the property described in Exhibit A and depicted in Exhibit B attached hereto; and

WHEREAS, the Forest Preserve District of Du Page County, Illinois, has attempted to negotiate the purchase of said property but has been unable to agree with the owners of the property concerning just compensation.

NOW, THEREFORE, BE IT ORDAINED by the President and board of Commissioners of the Forest Preserve District of Du Page County, Illinois, as follows:

1. That it is necessary and desirable that the real estate described in Exhibit A and depicted in Exhibit B attached hereto, be acquired in fee simple by the said Forest Preserve District for one or more of the purposes set forth.

2. That the Executive Director, his staff and the Forest Preserve District attorneys be, and hereby are, authorized to take the necessary steps, either by negotiation or condemnation,

to acquire title to the real estate described in Exhibit A and depicted in Exhibit B attached hereto, and to continue to negotiate for the acquisition of the property described in Exhibit A and depicted in Exhibit B." Forest Preserve District of Du Page County, Ordinance No. 98—228 (eff. June 2, 1998).

On July 8, 1998, the District filed a complaint for condemnation. The complaint named the Browns as owners of the real estate and listed defendants Bruce Gordon and Dartmoor Homes Acquisition Corp. as other interested parties. In response, the Browns filed a traverse and motion to dismiss, asserting, among other things, that the complaint for condemnation was filed without proper and lawful authority.

Both sides moved for summary judgment on the traverse and motion to dismiss. On November 29, 1999, the trial court granted summary judgment in favor of the Browns, holding that Ordinance No. 98—228, which authorized the initiation of the condemnation proceedings, was invalid. In its memorandum opinion and order, the trial court found that the Ordinance "improperly delegates the decision to condemn to the District's attorneys and staff." The trial court further found:

"The language of Ordinance [No.] 98—228 lacks any proper direction or limitation to the [District's] staff and attorneys regarding the specific authority to condemn. The broad language authorizing the District's staff to 'take the necessary steps' to acquire the property, 'either by negotiation or condemnation' fails to meet the specificity mandated for a proper execution of condemnation authority. Ordinance No. 98—228 is void because it unlawfully delegates discretionary power to staff and attorneys. The power to condemn is specifically vested by the Illinois Legislature in the Commissioners of the [District] only."

The District's motion to reconsider was subsequently denied.

*Amicus curiae* briefs in support of the District have been filed in this matter by the Village of Bartlett, the People of the State of Illinois, the Illinois Department of Transportation, the Illinois State Toll Highway Authority, the County of Du Page, the City of Naperville, the McHenry County Preservation District, and the Homewood-Flossmoor Park District.

## WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

•1 The District argues that the trial court erred in entering summary judgment in favor of the Browns. Summary judgment should only be granted when the pleadings, depositions, affidavits, and admissions show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 753 (1999). In ruling on a summary judgment motion, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Largosa*, 303 Ill. App. 3d at 753. Our review of a trial court's order granting summary judgment is *de novo. Largosa*, 303 Ill. App. 3d at 753.

●2 As a sovereign, the State has the inherent power to condemn property for public use. *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 453 (1994). "The necessity or propriety of exercising the right of eminent domain is a political question,—one which belongs exclusively with the legislature to determine." *Village of Hyde Park v. Oakwoods Cemetery Ass'n*, 119 Ill. 141, 149 (1886). However, the legislature may delegate the power of eminent domain to other governmental bodies (*City of De Kalb v. Anderson*, 43 Ill. App. 3d 915, 917 (1976)), and it is the province of the courts to determine whether that power has been exercised within that grant (*Forest Preserve District*, 161 Ill. 2d at 453).

●3 A governmental body has only such powers of eminent domain as are conferred upon it by the appropriate legislative body, and a statute or ordinance conferring the power of eminent domain must be strictly construed. *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 712 (2000); *Forest Preserve District v. Estes*, 222 Ill. App. 3d 167, 175 (1991). The right of eminent domain by a department of government can be exercised only when such grant is specifically conferred by legislative enactment, and then only in the manner and by the agency so empowered. *Forest Preserve District v. City of Chicago*, 159 Ill. App. 3d 859, 861 (1987).

●4 Section 6 of the Downstate Forest Preserve District Act (the Act) (70 ILCS 805/6 (West 1998)) grants the District the power to acquire land by purchase or condemnation. 70 ILCS 805/6 (West 1998). The Browns do not contend that section 6 vested in the District undue discretion to condemn land; rather, they assert that the District, in enacting Ordinance No. 98—228, unlawfully delegated legislative power to its staff. Agreeing with the Browns, the trial court declared that the language of the ordinance left "the decision to condemn up to the executive director, his staff and the Forest Preserve District attorneys." Further, the ordinance failed "to set forth any specific directions or limitations regarding the specific decision to condemn; therefore, legislative power has been improperly delegated to the District's staff."

●5 A law vesting discretionary power in an administrative officer must properly define the terms under which the discretion is to be exercised. *In re Application for Judgment & Sale of Delinquent Prop-*

*erties for the Tax Year 1989*, 167 Ill. 2d 161, 176 (1995). Intelligible standards must be provided to guide the officer in the execution of the delegated power. *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 130 (1974). However, criteria so narrow as to govern every detail necessary in the execution of the delegated power are not necessary. See *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 423 (1997).

•6 In construing the challenged ordinance, we set forth and apply the same principles of construction that we would in construing a statute. See *Katz v. City of Chicago*, 177 Ill. App. 3d 305, 310 (1988) ("the rules governing the construction and interpretation of statutes also apply to the construction of ordinances"). Although mindful that an ordinance delegating the power of eminent domain is to be strictly construed (*Amann*, 311 Ill. App. 3d at 712), we are as much aware that an ordinance is presumed valid and that the burden of establishing invalidity rests upon those who challenge the ordinance (*Village of Spring Grove v. Doss*, 202 Ill. App. 3d 858, 863 (1990)). Furthermore, statutes and ordinances should be construed in such a manner as to avoid doubts as to their validity. *Triple A Services, Inc. v. Rice*, 131 Ill. 2d 217, 227 (1989).

•7 The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000); *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). The best evidence of legislative intent is the language employed in the statute itself, which must be given its plain and ordinary meaning. *Lulay*, 193 Ill. 2d at 466; *Paris*, 179 Ill. 2d at 177. The statute should be construed as a whole, with each section read in conjunction with every other section. *Lulay*, 193 Ill. 2d at 466; *Paris*, 179 Ill. 2d at 177. A court is not permitted to ignore the plain meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Lulay*, 193 Ill. 2d at 466; *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 532 (1994). Where the statutory language is clear and unambiguous, a court must give it effect without resort to other aids of construction. *Lulay*, 193 Ill. 2d at 466; *Paris*, 179 Ill. 2d at 177.

We see no ambiguity in the language of Ordinance No. 98—228. In construing the ordinance as a whole, we of course look to all sections of the ordinance, including the section that references Ordinance No. 98—206. Thus, to read Ordinance No. 98—228 in its entirety, we in turn examine Ordinance No. 98—206. We conclude that, although the District therein "authorized" its staff to negotiate with the Browns for the acquisition of their property, the District clearly was *directing* its staff to negotiate. The Browns do not suggest that the District

formally decided that it was necessary to acquire the property, proceeded to determine a fair price for the property, and then gave its staff the choice of whether to negotiate. Giving, as we must, the same meaning to the term "authorize" in both ordinances (see *In re Application for Tax Deed*, 311 Ill. App. 3d 440, 444 (2000)), we read Ordinance No. 98—228 as directing the District's staff to acquire the Brown's property either through negotiation or condemnation.

We also note the District's statement in Ordinance No. 98—206 that it had determined what it viewed as a fair price for the Brown's property. This of course means, and the Browns do not dispute, that, throughout the course of the negotiations authorized by Ordinance No. 98—206, there was an upper limit on the price the District staff could offer for the property. We further observe that Ordinance No. 98—206 permitted the District's staff to entertain an offer by the Browns to convey less than a fee simple interest and required the staff to submit an evaluation of such an offer to the District's land acquisition committee. Lastly, we note that the acceptance of such an offer was conditioned on the approval of the District. There is no dispute that these guidelines remained in force during the continued negotiations authorized by Ordinance No. 98—228.

We emphasize that the failure of the Browns and the District staff to agree upon a price for the property was expressed as a reason for the adoption of Ordinance No. 98—228. Significantly, while authorizing the use of condemnation proceedings, Ordinance No. 98—228 did not order that negotiations cease between the Browns and the District staff. The Browns recognize that "the District's staff is always free to attempt to settle a condemnation case without litigation" and that "[t]here is always an implied right to negotiate towards settlement." Indeed, had Ordinance No. 98—228 simply directed the District's staff to institute condemnation proceedings, and, before the complaint was filed, had the Browns contacted the staff with an acceptance of the last offer made by the District's staff before the ordinance was passed, reading the ordinance as requiring the staff to reject the acceptance and file a lawsuit simply because the ordinance directed it to file a condemnation complaint would be absurd. Statutes are to be construed in a manner that avoids absurd or unjust results. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990). In authorizing negotiations with the added recourse of condemnation, Ordinance No. 98—228 merely makes explicit the implied authority to negotiate that the Browns concede exists.

Although the Browns recognize that the District's staff is always authorized to negotiate to seek the settlement of a condemnation suit without litigation, they insist that Ordinance No. 98—228 is invalid

because it leaves to the staff the decision whether to condemn the Browns' property without further negotiation, even though negotiations following the decision to condemn might dispense with the need for adjudication. We confess to having some difficulty in grasping precisely the nature of the Browns' argument on this point. At one point, the Browns argue that Ordinance No. 98—228 is invalid because it granted the District's staff "the power to determine whether to negotiate a purchase of the Brown's property *or to file condemnation [sic] to acquire the property.*" (Emphasis added.) At another point, they assert that the problem is that "Ordinance 98—228 did not contain an unequivocal direction to condemn; it contained a grant of discretion *to decide whether to condemn the Brown property.*" (Emphasis added.) At yet another point, they maintain that the ordinance is flawed because "elected officials that make up the District's Board of Commissioners must make the determination that negotiations have failed and *direct condemnation,*" and "the District never made a definitive finding *that it was necessary to acquire the property through the use of the condemnation power.*" (Emphases added.)

The Browns confuse two vitally distinct claims: first, the claim that Ordinance No. 98—228 is invalid because it leaves to the District's staff the decision to file condemnation proceedings against the Browns' property and, second, the claim that the ordinance is invalid because it leaves to the District's staff the political decision of whether the exercise of the power of eminent domain against the Browns' property is appropriate.

Surely, the District could not permissibly have delegated to its staff the sensitive policy decision of whether a particular parcel of property should be seized under the power of eminent domain. As we noted above, "[t]he necessity or propriety of exercising the right of eminent domain is a political question,—one which belongs exclusively with the legislature to determine." *Village of Hyde Park,* 119 Ill. at 149. In our view, in adopting Ordinance No. 98—228, the District did not abdicate that crucial political role. Ordinance No. 98—228 was adopted expressly because the negotiations for the Browns' property had theretofore failed. The negotiations had failed, *yet* it remained "necessary and desirable" to acquire the Browns' property. To the end of acquiring the property, the District gave its staff an additional means of acquisition: condemnation proceedings. We do no violence to the plain language of the ordinance in concluding that, in light of the failure of previous negotiations and the continued necessity of acquiring the Browns' property, the District authorized its staff to institute condemnation proceedings to acquire the property. We further decide,

consistent with the language of the ordinance, that the District would not have authorized condemnation proceedings had it not concluded that it was politically appropriate to condemn the Browns' property—or, in the words of the ordinance itself, that it was "necessary and desirable" to acquire the Browns' property "for one or more of the purposes" set forth in the ordinance. By the time the District staff was given the power to institute condemnation proceedings, the District had already determined the political propriety of exercising the power of eminent domain against the Browns' property.

In giving its staff the additional recourse of condemnation proceedings, the District did not empower it to decide the political issue of whether it was appropriate to condemn the Browns' property, for the District itself had already made that determination. Granted, the staff was given the discretion of instituting condemnation proceedings immediately or negotiating further, but, as we noted above and as conceded by the Browns, the option of negotiating would be implied had the District simply ordered the staff to condemn. The negotiating discretion granted the staff by Ordinance No. 98—228 was not without bounds, however. In negotiating further with the Browns, the staff would be guided by discrete parameters consisting of a maximum price it could offer as well as specific requirements concerning the acceptance of an offer of less than a fee simple conveyance.

Ordinance No. 98—228 leaves no doubt of the District's steadfast intention to acquire the property—through either negotiation or condemnation—and its belief in the propriety of either means of acquisition. We find the District's staff was given appropriate guidelines to execute the directive to acquire the property.

To say that the District staff could not properly be vested with the power to determine the political propriety of exercising the power of eminent domain against a particular parcel of property is not to imply that it could not, under any scenario, be given the discretion to decide when to institute condemnation proceedings against a parcel of property that the District had already determined could properly be seized under the power of eminent domain. The Browns cite no authority for the proposition that a governmental body that has been accorded the condemnation power by statute cannot entrust to its staff the decision to institute condemnation proceedings against a particular parcel of property that the condemning authority already determined could be seized under the power of eminent domain, as long as the decision to institute such proceedings is bounded by reasonably definite standards. On the contrary, the Browns concede the legitimacy of such a delegation. They assert that "Ordinance 98—228 must contain specific directions or limitations regarding the specific decision to condemn in

order to insure that this legislative power [of eminent domain] is not being exercised by the District's staff and its attorneys." At another point, they complain that "[n]o guidelines were given on the face of Ordinance 98—228 to guide [the District's staff] in determining when attempts to purchase the property through negotiations should end and condemnation should be filed." We are provided no reason to believe that a governmental body entrusted with the power of eminent domain cannot strive for efficiency in its operations. "Government could not be carried on if nothing could be left to the judgment and discretion of administrative officers ***." *Block v. City of Chicago*, 239 Ill. 251, 262 (1909).

The Browns claim that "[n]o guidelines were given on the face of Ordinance No. 98—228 to guide [the District's staff] in determining when attempts to purchase the property through negotiations should end and condemnation should be filed." We reject the claim. We noted above that it is clear from the language of Ordinance No. 98—206, referenced in Ordinance No. 98—228, that the District's staff was given a maximum price to offer the Browns and was subject to specific requirements concerning the acceptance of offers of less than a fee simple conveyance. The parties do not dispute that these restrictions also applied to the authority to negotiate granted by Ordinance No. 98—228. In our view, these restrictions adequately curtailed the staff's discretion. Moreover, as explained above, we read Ordinance No. 98—228's authorization of the staff to acquire the Browns' property either by negotiation or condemnation as a clear directive to the staff to acquire the property. Thus, if, in the exercise of its curtailed negotiating discretion, the staff concluded that further negotiations were futile, it had no option but to file a condemnation suit.

The Browns offer no authority to persuade us that the restrictions on the staff's discretion were inadequate. The cases they cite all concern delegated power that was not circumscribed by even general mandates. In *People ex rel. Healy v. Clean Street Co.*, 225 Ill. 470, 480-81 (1907), the court struck down a statutory provision authorizing city authorities to "take such steps as they might deem effective to prevent the casting of waste paper and other litter upon the streets" because the city officials "were not even given general directions as to the manner in which they were to exercise the power conferred upon them."

In *City of Sullivan v. Cloe*, 277 Ill. 56, 61-62 (1917), the court invalidated an ordinance imposing a fine for affixing anything to any permanent fixtures previously installed on city property without first obtaining the permission of the mayor and the members of the city's street and alley committee. The court observed that the ordinance did

not attempt to "specify the circumstances and conditions under which such permission shall be granted and prescribe the rules and regulations that are to guide the officers in granting or refusing such permission." *City of Sullivan*, 277 Ill. at 62.

In *City of Kankakee v. New York Central R.R. Co.*, 387 Ill. 109, 117 (1944), the court invalidated an ordinance authorizing a city's building inspector to summarily abate as a nuisance the emission of dense smoke from any locomotive, tar kettle, steam machine, open fire, smoke stack, or chimney of any building. The court reasoned that there was "nothing in the ordinance which indicates that full discretion was not given to the building inspector." *City of Kankakee*, 387 Ill. at 117.

In *City of Chicago v. Pennsylvania R.R. Co.*, 41 Ill. 2d 245, 252 (1968), the court invalidated a statutory provision permitting city highway authorities to create exceptions to a general statutory bar on the placement of advertising signs on or over highways because the legislature failed to supply "*any* rules or standards to guide the exercise of [the highway authorities'] discretion" in making exceptions. (Emphasis in original.)

In *City of Watseka v. Blatt*, 320 Ill. App. 191, 200 (1943), the court held that an ordinance subjecting the location and operation of a junkyard in any industrial district to the approval of a board of zoning appeals was invalid in part because it "specifie[d] no terms or conditions for such approval, but [left] it to the caprice of the board of zoning appeals."

In contrast to the authorizing provisions in the above cases, Ordinance No. 98—228 circumscribed the discretion of those it empowered. The District's staff could only offer the Browns up to a certain amount of money before the staff was required to institute condemnation proceedings. Also, in addition to the requirement that all offers of less than a fee simple conveyance were to be conveyed to the District's land acquisition committee, the District itself had to approve the acceptance of such offers. Obviously, the District did not attempt to govern the fine mechanics of the negotiations in passing the ordinance, but, as indicated above and as conceded by the Browns themselves, such control was not required.

The Browns criticize as too broad the ordinance's authorization for the District's staff "to take the necessary steps" to acquire the land. However, the Browns do not offer a suggestion as to what step(s) the District's staff might have taken other than the enumerated steps of negotiation and condemnation. We cannot think of any and, therefore, cannot declare that phrase confers undue discretion. Instead, we conclude that the District's staff was guided by intelligible

standards imposed by the District—namely, an upper limit on the price it could offer the Browns for the property and specific requirements concerning the acceptance of offers of less than a fee simple conveyance—in deciding when to institute condemnation proceedings.

•8 Mindful that the aim of statutory construction is to divine and effectuate the intent of the legislature, we determine that the District's intent in passing Ordinance No. 98—228 clearly was to acquire the Browns' property. The negotiations authorized by Ordinance No. 98—206 had failed, yet the District continued to consider it necessary and desirable to acquire the Browns' property. Considering it appropriate to exercise the power of eminent domain to acquire the property, the District empowered its staff to acquire the property either through continued negotiations within certain guidelines imposed by the District or through condemnation proceedings. Because we decide that the challenged ordinance did not vest the District's staff with the power to determine the political propriety of condemning the Browns' property, but merely authorized the staff to effectuate an already approved condemnation action or to negotiate further with the Browns within definite guidelines set by the District, we conclude that Ordinance No. 98—228 did not improperly delegate the power of eminent domain to the District's staff. Therefore, the trial court erred as a matter of law in granting the Browns' motion for summary judgment on the traverse and motion to dismiss.

## CONCLUSION

In the nonpublishable portion of this opinion, we affirmed the portions of the Du Page County circuit court's judgment that (1) denied the District's motion to disqualify the Browns' counsel and (2) granted the District's motion to strike portions of the Browns' traverse and motion to dismiss.

For the reasons stated above, we reverse the judgment of the circuit court of Du Page County as to the granting of summary judgment, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

GEIGER, J., concurs.

JUSTICE RAPP, dissenting:

I respectfully dissent. This case concerns two of the most significant acts of government, the taking of private property for public use and the expenditure of large sums of the taxpayers' money to do so.

In dissenting from the majority, I agree with the decision of the

trial court that Ordinance No. 98—228 is invalid because it amounts to an improper delegation of discretionary authority. I disagree with the trial court's conclusion that section 7—102 of the Code of Civil Procedure (735 ILCS 5/7—102 (West 1998)) when applied to nonresident property owners is constitutional. The majority has affirmed the trial court on this issue in the unpublished portion of its opinion. Therefore, I disagree with the majority on both of these issues.

Section 6 of the Downstate Forest Preserve District Act (the Act) grants the District the power to acquire land by purchase or condemnation. 70 ILCS 805/6 (West 1998). The power granted under the Act is vested in the District, not in its staff or attorneys. Ordinances passed by a department of government may, of course, be enforced or carried into effect by staff, attorneys, or others designated for that purpose. See *People ex rel. Healy v. Clean Street Co.*, 225 Ill. 470, 479 (1907); see also *City of Sullivan v. Cloe*, 277 Ill. 56, 59 (1917). However, a department of government cannot delegate discretionary authority vested in it by statute. *Clean Street Co.*, 225 Ill. at 479; *City of Sullivan*, 277 Ill. at 59. This is because departments of government are creatures of the legislature and can exercise such powers, and only such powers, as are expressly conferred upon them by the law of their creation, or such powers as are necessary to carry into effect the powers expressly granted to them. *City of Sullivan*, 277 Ill. at 59.

The ordinance passed by the District delegated the uncontrolled discretion to its staff and attorneys to decide not only when but also *whether* to acquire the Browns' property by negotiation or condemnation. Contrary to what the majority reports, the ordinance gave no guidelines or direction to the District staff and attorneys. The majority attempts to "bootstrap" its argument by incorporating into Ordinance No. 98—228, by reference, Ordinance No. 98—206 and its clauses and directions. Ordinance 98—206 was the prior adoption of the District that authorized staff and counsel to negotiate for the acquisition of the Browns' property. Ordinance No. 98—228, which authorizes but does not direct the filing of a lawsuit to condemn, merely recites that the previous ordinance (No. 98—206) was adopted to provide for negotiation. Using Ordinance No. 98—206, the majority finds reasonably definite standards in Ordinance No. 98—228 and adds that "[t]he parties do not dispute that these restrictions also applied to the authority to negotiate granted by Ordinance No. 98—228." 323 Ill. App. 3d at 696. This statement is not supported by the briefs or arguments of the Browns. They have steadfastly argued that Ordinance No. 98—228 lacks any guidelines or reasonably definite standards to direct the District's staff and counsel.

I believe that the power vested in the District by the Act involves

the exercise of judgment and discretion and is of such a character that it cannot be delegated by it to others, to be arbitrarily exercised by them. An ordinance vesting discretionary power in an administrative officer, without properly defining the terms under which discretion is to be exercised, is void as an unlawful delegation of legislative authority. See *City of Kankakee v. New York Central R.R. Co.*, 387 Ill. 109, 117 (1944). To be valid, the ordinance should specify the circumstances and conditions under which the staff or attorneys should proceed with negotiation or condemnation and provide directions to guide the staff or attorneys in proceeding with negotiation or condemnation. See *City of Sullivan*, 277 Ill. at 59.

I agree with the majority when it reflects on the reality that cases of this nature are settled both before and after the actual filing of the eminent domain proceedings. I also acknowledge, as the majority did, that several governmental bodies actively engaged in condemnation proceedings have filed *amicus* briefs wherein they basically support the District because the District's Ordinance No. 98—228 is in essentially the same format that they use. They urge that they cannot all be in error. Yet they have not faced the argument presented in this case.

There is another compelling factor that emphasizes the District's responsibility to both its constituents (the taxpayers) and the owner of the property to be taken. Section 7—123 of the Code of Civil Procedure (735 ILCS 5/7—123 (West 1998)) provides that the District will become responsible for the payment of all costs, expenses, and reasonable attorney fees of the Browns if the District is not successful in acquiring the property by condemnation. See *Village of Cary v. Trout Valley Ass'n*, 297 Ill. App. 3d 63 (1998). It is apparent, then, that deciding whether and when to condemn is a very important act on behalf of the District. Ordinance No. 98—228 allows staff and counsel to decide whether and when they will expose the District to the additional liabilities encompassed in section 7—123.

Accordingly, I believe that Ordinance No. 98—228, authorizing the District's staff and attorneys to acquire the Browns' land by "negotiation or condemnation," is void as an unlawful delegation of discretionary authority. I further believe that such provision is an inseparable part of the ordinance and of such character that the ordinance would not have been adopted but for such provision. See *City of Sullivan*, 277 Ill. at 63. Because I believe that the ordinance underlying the condemnation action was void, I would hold that the trial court did not err in granting summary judgment in favor of defendants.

The majority has chosen, in its opinion, not to publish its decision to deny the Browns' cross-appeal. The Browns had filed a traverse and

motion to dismiss, asserting no *bona fide* attempt by the District to negotiate and agree upon just compensation, an improper and unnecessary purpose in taking, and a taking in excess of the District's needs. Dartmoor filed a similar traverse and motion to dismiss. The trial court had dismissed the allegations that the District did not make a *bona fide* attempt to agree on just compensation. The dismissal was based upon the statutory provision that has been interpreted to require the District to negotiate in good faith, but makes no such requirement when the owner is incapable of consenting, the owner's name or residence is unknown, or the owner is a nonresident of this state (735 ILCS 5/7—102 (West 1998)). The Brown Family Trust is not a resident of this state, and the Browns were denied the right to argue that, because the Browns had previously entered into a contract for the sale of the same property for $3.25 million, the District's offer of $1.22 million as just compensation was not in good faith. Evidence was not taken on the issue of the propriety of the District's offer because the Browns, being nonresidents, were not entitled to be dealt with in the same good faith as an Illinois resident.

I believe that section 7—102 of the Code of Civil Procedure is unconstitutional because it denies equal protection to out-of-state owners of Illinois property (U.S. Const., amend. XIV). Requiring good faith only as to Illinois residents is arbitrary and capricious as applied in the year 2000. Perhaps it was a necessity in 1894, when our means of communication and transportation would have placed a real barrier in the early condemnation proceedings before the advent of the 20th Century. Today there is no conceivable rational basis for such a distinction. Consider the present practices in place to contact owners. Tax bills are mailed to the owner's residence, wherever that might be, and not just to the location of the property. The availability of modern methods to locate property owners is almost limitless. The use of wireless and land phone lines for conversation, facsimile transmission, and e-mail are present and used every day by millions of people. In my opinion, it is a violation of equal protection, and the traverse for failure to make a "good faith" effort to negotiate an agreement before filing such an action to condemn should have gone to a hearing on the factual issues presented.